242 N.J. Super. 436 (1990)
577 A.2d 177
FELICIA B. JAMISON, COMPLAINANT-APPELLANT-CROSS RESPONDENT,
v.
ROCKAWAY TOWNSHIP BOARD OF EDUCATION, RESPONDENT-RESPONDENT-CROSS APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1990.
Decided July 11, 1990.
*439 Before Judges J.H. COLEMAN, BRODY and MUIR, Jr.
Stephen B. Wiley argued the cause for appellant (Wiley, Malehorn & Sirota, attorneys (Stephen B. Wiley, of counsel); Robert Goldsmith and Arthur L. Raynes, on the brief and reply brief).
Jacob Green argued the cause for respondent (Green & Dzwilewski, attorneys; (Jacob Green, of counsel); Paul H. Green, on the brief and letter reply brief).
The opinion of the court was delivered by MUIR, JR., J.A.D.
It is well settled that discrimination based on the color of one's skin is a profound wrong of tragic dimension. See Patterson v. McLean Credit Union, ___ U.S. ___, ___, 109 S.Ct. 2363, 2379, 105 L.Ed.2d 132, 158 (1989). This appeal from a final decision of the Director of the Division on Civil Rights deals with one of the more invidious, subtle aspects of such *440 discrimination  denial of a promotion as retaliation for an employee's prior pursuit of an employment discrimination claim.
The Director found retaliation occurred and ordered remedies and a penalty. In so doing, he applied proof standards appropriate to circumstances where employment termination, rather than denial of promotion, was the product of the retaliatory intent. We hold those proof standards should have been refined to deal with denial of promotion circumstances.
Accordingly, we affirm the Director's decision (1) to the extent he found, or the record supports a holding, that petitioner presented prima facie proof that she was denied promotion as the result of retaliatory action by her employer, and (2) to the extent he found, or the record supports a holding, that petitioner is entitled to a presumption that she was rejected for promotion by the school superintendent due to the latter's retaliatory intent. However, we reverse the remainder of the Director's final decision and remand for further proceedings consonant with this opinion.

I.
Dr. Felicia Jamison, a black employee of the Rockaway Township School District, first encountered racial discrimination in Rockaway Township when she applied for a vice-principalship in the school system, but was not appointed. While we need not review in their entirety the events that followed, it is sufficient to state that Jamison pursued a successful claim of racial discrimination against the School Board. In April 1987, the Director found racial discrimination and, among other relief, ordered Jamison's appointment to the position of vice-principal. The Director's order also contained a provision that neither the Board nor any of its employees should retaliate against Jamison for asserting her civil rights claim. In April of this year, we affirmed the Director's findings and ordered Jamison's appointment, but made certain modifications in other remedies awarded.
*441 After the April 1987 order of the Director, the Board acted on School Superintendent Fanning's recommendation to reorganize its administrative structure to eliminate vice-principalships in the Township. On July 1, 1987, when Jamison arrived for work at her new position, her principal told her to go home because the Board had obtained a stay of the Director's placement order. The next day, Jamison again reported to work, at which time Fanning told her to go home and Jamison complied. The record discloses no evidence of a stay being granted to the Board. Fanning testified he knew the Board made only an application for a stay, but acknowledged he ordered Jamison to go home, saying "it will all get worked out."
In July 1988, the Board established the position of Director of Curriculum. In the position vacancy notice, it described the certification and experience needed and identified the salary range. Under the category experience needed, the notice read:
Minimum of five years of teaching experience. Minimum of one year as supervisor of subject area, or central office position. Minimum of one year experience in a position which required the formal observation and evaluation of staff.
Jamison applied for the position. She did not get the job. The job was given to someone who, shortly thereafter, resigned. In 1989, the Board abolished the Director of Curriculum position, only to create a similar position for an Assistant Superintendent of Curriculum and Instruction, the post at issue here.
The history of that position began in June 1989, when Fanning posted a vacancy notice for it. At the time, the Board had not officially adopted a job description although, apparently, it had informally authorized Fanning to conduct a search. The Board needed the position promptly filled to comply with directives of the State Education Commissioner.
The vacancy notice provisions matched, in many respects, the prior Director of Curriculum notice. In two respects, it differed significantly: (1) it contained no proposed salary and (2) it narrowed the required experience to "Minimum of [ten] years *442 of teaching experience. Minimum of one year of Central Office Position." It also noted the job would begin "As soon as possible."
The need to fill the position promptly caused Fanning, with the Board's approval, to limit applicants to persons within the Rockaway Township system. Three people applied: Jamison, Dr. Thomas Parciak, the School Board Secretary and Business Administrator, and Sarah Zeigler, a principal in the system. Fanning had one of his assistants make a preliminary credentials review. In July 1989, after the assistant forwarded the names of all three applicants to Fanning, he conducted one-on-one interviews.
Fanning used five questions in the interviews. He did not transcribe the interviews. Instead, he kept handwritten notes. The ALJ found the "notes were not kept in narrative form, but [were] simply a sequence of barely legible words and phrases which would presumably operate to refresh his memory as to the responses of each candidate...." The Director accepted those findings.
On August 29, 1989, Jamison filed a complaint with the Division on Civil Rights alleging an act of retaliation in the Board's attempt to abolish her assistant principalship.
On September 13, 1989, Fanning encountered Jamison in a school cafeteria and told her, among other things, he would not recommend her for the assistant superintendent position. The ALJ and Director found Jamison's version of this conversation more credible than Fanning's version. The ALJ found the encounter occurred as follows:
It is Jamison's testimony, and I FIND that on September 13, 1989, Fanning approached her in the cafeteria of the Copeland School and asked to speak with her. He took her to an area of the cafeteria where no one else was present and told her that he wanted her to know before it became public that he did not select her as a candidate for the position and would not recommend her to the Board. In response to her questions, he told her that she lacked certain qualifications and specified that central office experience was one of them.
When Jamison pointed out that Fanning made this decision without consulting anyone else and questioned his independence of the prior events which *443 transpired between herself and the Board, he stated that he did not want to talk about her case. When she repeated that he alone was making the decision, he said, `so, you are an attorney', and she said, `No, I'm not an attorney, but I've been involved in this situation for 11 years'. Fanning then proceeded to question the ethics of attorneys who keep a case going for that length of time and told Jamison that legislation was going to be introduced so that attorneys could no longer unduly prolong litigation. He began to discuss frivolous lawsuits, implying that [other employee cases] were frivolous, and said that the New Jersey Education Association lawyers would continue Jamison's case. Jamison told him that [the other employees'] legal fees were paid by the NJEA and that she was forced to pay her own counsel fees in order to protect herself. From Fanning's statement, Jamison was left in no doubt that she was denied the position of Assistant Superintendent, Curriculum and Instruction, based upon her civil rights litigation against the district.
On September 26, 1989, based on the conversation with Fanning, Jamison filed an emergent notice of motion with the Director. The motion sought to restrain the Board from appointing any individual other than Jamison to the position of assistant superintendent pending a hearing on Fanning's conduct. The Director did not resolve the motion immediately.
The next day, the Board adopted the minimum criteria for the assistant superintendent position. The experience criteria matched those set forth in Fanning's June 1989 vacancy notice.
When, on October 11, 1989, the Director's office denied the restraint requested, Jamison applied to this court for a stay. During discussions on what action this court should take, counsel for the Board conceded that in the absence of a stay, the Board intended to appoint Parciak to the vacancy. We granted leave to appeal, entered a stay, and remanded to the Director "to conduct a hearing to determine whether Dr. Jamison has been discriminated against in the form of retaliation by Dr. John F. Fanning ... in failing to recommend Dr. Jamison for the position of Assistant Superintendent for Curriculum [and] Instruction."
After the hearing, the ALJ held Jamison made out a prima facie case of retaliatory discrimination and the Board did not articulate a non-retaliatory basis to overcome Jamison's proof. In reaching those conclusions, the ALJ referred to proof standards *444 set out in a footnote in Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 n. 1, 536 A.2d 237 (1988). The footnote referred to the federal employment law standard for proving a retaliatory discrimination claim set out in Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.1984). The Director, who expressed an intent to utilize the same proof standards, adopted the ALJ's findings in the final decision, and ruled Jamison had proved her claim of retaliation. Both the ALJ and the Director, in different ways, confounded the standards on order of proof and allocation of burden of proof in this complex area of the law.
On the issue of remedy, the Director rejected Jamison's contention she should be named to the position. The Director ruled the lack of evidence in the record on Zeigler's qualifications precluded him from granting the relief Jamison sought. The ALJ had ruled that proof of Zeigler's comparative qualifications was beyond the scope of the retaliation claim. Consequently, the Director ordered a new hiring process, devoid of the superintendent's participation, to afford the Board the opportunity to make a "non-discriminatory selection."[1]

II.

A
We turn first to the issues of the appropriate order of proof and allocation of burden of proof in an action that (1) involves a claim of retaliation against an employee for engaging in the protected activity of pursuing an employment discrimination claim and (2) deals with denial of promotion, rather than the usual termination of employment, as the predicate act of retaliation. These issues involve strictly legal questions. As *445 such, no rule of deference to agency resolution is required. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973).
The Law Against Discrimination (LAD) makes retaliatory discrimination an unlawful employment practice. Such an unlawful employment practice occurs when an employer, or an employee, for any reason, takes reprisal against another employee because the latter has challenged any practices or acts forbidden by the LAD. See N.J.S.A. 10:5-12d. While the condemned practice is easily expressed, the determination of its existence, due to its subtle and invidious nature, is a much more difficult matter.
Similar to a claim of racial discrimination, a claim of retaliation involves several tiers of proof. The initial tier requires the claimant to establish a prima facie case. This is done by demonstrating by the preponderance of the evidence that (1) claimant engaged in a protected activity known to the employer, (2) claimant thereafter was subjected to adverse employment decision by the employer, and (3) there was a causal link between the two. Wrighten v. Metropolitan Hospitals, Inc., supra, 726 F.2d at 1354; Velantzas v. Colgate-Palmolive Co., supra, 109 N.J. at 193 n. 1, 536 A.2d 237.
Once the claimant makes a prima facie showing, the burden of going forward, but not the burden of persuasion, shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action. Wrighten v. Metropolitan Hospitals, Inc., supra, 726 F.2d at 1354. If the employer articulates such a reason, the claimant-employee is afforded a fair opportunity to show by preponderating evidence that a discriminatory intent motivated the employer's action. The claimant can accomplish this by proving that the articulated reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer. Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217 (1981)). When plaintiff *446 succeeds in that burden, a presumption is created that the adverse employment action was the product of improper retaliatory intent. Id. Then, the employer must prove by the preponderance of the evidence that the adverse action would have been taken regardless of retaliatory intent. Id.
The Wrighten criteria have some consistency and some contrast with the McDonnell Douglas[2] criteria utilized to assess the existence of unlawful discrimination. See Andersen v. Exxon Co., 89 N.J. 483, 492-493, 446 A.2d 486 (1982). Yet, like the McDonnell Douglas criteria, the Wrighten standards are not rigid or mechanistic and are subject to adjustment, refinement or fine tuning to fit the factual circumstances of each case. See Teamsters v. United States, 431 U.S. 324, 357-358, 97 S.Ct. 1843, 1865-1866, 52 L.Ed.2d 396, 429 (1977); Wrighten v. Metropolitan Hospitals, Inc., supra, 726 F.2d at 1354; Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382-383, 541 A.2d 682 (1988); Clowes v. Terminix Intern., Inc., 109 N.J. 575, 596, 538 A.2d 794 (1988). Such a refinement is required here.
The refinement is necessary because the claim of alleged retaliatory action here is the failure to promote rather than the typical employment discharge that occurred in Wrighten. In a discharge case, no consideration need be given to the competition because there is none. However, in a failure to promote case, consideration must be given to the competition, where it exists. See Terry v. Mercer Cty. Freeholder Bd., 86 N.J. 141, 152, 430 A.2d 194 (1981).
In Ruggles v. California Polytechnic State University, 797 F.2d 782 (9th Cir.1986), the court applied refinements appropriate to the Wrighten proof criteria for the case at bar. Ruggles dealt with a claim of retaliation for failure to hire a pre-existing part-time employee to a position subsequently abolished. The *447 Ruggles court adhered to the Wrighten criteria, but redefined the scope of "adverse employment decision." Id. at 786. After the court reached the presumption that the adverse employment action was the product of improper retaliatory intent, it imposed on the employer the burden of overcoming the presumption by showing, by preponderating evidence, that other job applicants had better qualifications than the plaintiff. Id. at 786-787. We find the reasoning of the Ruggles court persuasive and apply similar refinements to this case.
Accordingly, we hold that in a failure-to-promote context involving a claim of retaliation, a claimant establishes a prima facie case by proving by the preponderance of the evidence that (1) the claimant engaged in a protected activity that was known to the alleged retaliator, (2) the promotion sought was denied, and (3) the claimant's engagement in the protected activity was a cause of the promotion denial. See id. at 786.
The allocation of proof then follows the tiers set out in Wrighten until the presumption of retaliatory intent is in place. At that point, the employer's proofs must focus on the qualifications of the other candidates. The employer must prove by a preponderance of the evidence that the adverse action would have taken place regardless of the retaliatory motives of the employer. Id. at 786-787. By shifting the burden of proof, the responsibility is allocated to the party best able to marshal evidence and prove qualifications of other candidates. Id. at 786; see Erickson v. Marsh & McLennan Co., 117 N.J. 539, 554, 569 A.2d 793 (1990).
The proof on candidate qualifications thus resolves the issue of causation. Engaging in protected activities should not place a claimant in a better position than the candidate would be otherwise. Ruggles v. California Polytechnic State University, supra, 797 F.2d at 786. By requiring proof as delineated, we have avoided, through principles of causation, the potential of an inappropriate windfall, while at the same time properly allocating the burden of proving qualifications.
*448 In sum, we have refined the Wrighten criteria consonant with a retaliation claim raised by a pre-existing employee denied promotion. These refinements are appropriate to fit the circumstances of such a claim.

B
We turn now to the proofs of the case. In so doing, we note the School Board generally challenges all the findings made by the ALJ and the Director. Our review of the record, however, satisfies us that those challenges have no merit to the extent the Wrighten criteria were properly applied. However, due to the exclusion of the evidence on Zeigler's comparative qualifications, we conclude a remand is necessary to avoid a manifest injustice to both parties. See R. 2:10-2.
Our role in review of an agency head decision is carefully circumscribed. That role is to survey the record to determine whether there is sufficient competent, credible evidence to support the agency decision. See Clowes v. Terminix Intern., Inc., supra, 109 N.J. at 587, 538 A.2d 794; Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). It is not our function to substitute our judgment for that of the agency where there may exist a difference of opinion concerning the evidential persuasiveness of relevant proofs. De Vitis v. New Jersey Racing Com'n., 202 N.J. Super. 484, 489, 495 A.2d 457 (App.Div. 1985), certif. den. 102 N.J. 337, 508 A.2d 213 (1985). We do not weigh the evidence, determine the credibility of the witnesses, draw inferences and conclusions from the evidence or resolve conflicts therein. Id. 202 N.J. Super. at 489-490, 495 A.2d 457. Issues of credibility are for the fact triers. Moreover, should there be substantial evidence in the record to support more than one result, it is the agency's choice which governs. Dore v. Bedminster Tp. Bd. of Ed., 185 N.J. Super. 447, 453, 449 A.2d 547 (App.Div. 1982).
In this instance, our review satisfies us that given the credibility findings made and the legitimate inferences allowable *449 to a trier of fact in this invidious and subtle arena of discrimination, the evidence reached a level where the presumption was created that the adverse employment decision was the product of retaliatory intent. There can be no dispute that Jamison engaged in a protected activity which was known to Fanning. Neither can there be any dispute that adverse action occurred in that Fanning rejected Jamison for the assistant superintendent promotion. There is also ample support for finding a causal connection between the two initial criteria. Consequently, Jamison established a prima facie case of retaliatory intent under the refined criteria we previously articulated.
Moreover, regardless of the non-retaliatory reasons urged by the Board for Jamison's rejection, Jamison established the pretextual nature of the reasons for rejection through a Columbia University expert in recruitment and selection of school personnel. The expert, found credible by the ALJ, which finding the Director did not disturb, articulated ten defects in the process employed by Fanning. The expert described the process as a conglomeration of circumstances and anomalies very disturbing from a personnel policy viewpoint as well as from a discriminatory viewpoint. He characterized the central office experience as an irrational requirement. He observed that the changes made to the position vacancy notice when the title changed from Director of Curriculum to Assistant Superintendent for Curriculum and Instruction, indicated that "the person who was selected and his background [gives] the appearance that [the assistant superintendent position] was either tailor made for him or to eliminate Dr. Jamison or both...." He found the process followed by Fanning "curious" because it was "so out of line of normal practice...." These, in addition to other reasons given by the expert, clearly demonstrate the pretextual nature of Fanning's rejection of Jamison.
Consequently, although not so articulated by the Director, Jamison reached the proof tier where the presumption of retaliatory intent came into place.
*450 From the standpoint of our review, the Board then made an effort to overcome the presumption by showing Parciak more qualified than Jamison. The effort failed significantly. The Board offered an expert on curriculum who testified to Parciak's superior qualifications. The ALJ rejected the expert's credibility and testimony. The Director concurred. There is no basis on which we can disturb those findings.
Had Parciak been the only candidate competing with Jamison, a finding that Jamison's promotion rejection was the product of retaliatory intent would have been justified under the criteria we have enunciated. However, the Director's finding of retaliation cannot be allowed to stand in light of the refusal of the ALJ to hear evidence as to the comparative qualifications of Zeigler. Jamison achieves a windfall if she recovers the panoply of remedies available to her without proof she would have obtained the job. Only when Zeigler's qualifications are reviewed can the claim of retaliation be properly considered. See Ruggles v. California Polytechnic State University, supra, 797 F.2d at 786. In other words, the burden of disproving causation is on the Board once the presumption of retaliation occurs, but that opportunity must be afforded the Board.
The format of the remand is of concern in light of what has transpired. Although the Board has the burden of proving by the preponderance of the evidence Zeigler was better qualified for the assistant superintendent position than Jamison, we are concerned with the potential for an unbalanced opportunity to present evidence on that issue by a qualified expert. Had the ALJ properly allowed proof of Zeigler's comparative qualifications, Jamison might well have presented such proof on the issue when proving the Board's proffered non-retaliatory reasons pretextual. Consequently, on remand, Jamison should also be allowed to present such proof through a qualified expert.
*451 Moreover, we direct that proofs on remand shall be limited to the qualifications of Zeigler in comparison with those of Jamison. We do this for several reasons. First, the Board chose to limit the selection process to the three who applied. Jamison's retaliation claim should not be considered in any other context. Second, the Board has already made an effort to establish the superiority of Parciak's qualifications and failed. No legal theory requires it be afforded another opportunity.

CONCLUSION
We conclude Jamison proved a prima facie case of retaliation for engaging in a protected activity, and that Fanning's reasons for rejecting her, a decision for which the Board was responsible, were pretextual. Accordingly, Jamison was entitled to the presumption that her promotion denial was the product of retaliatory intent. The Director's ruling on liability for retaliatory conduct, however, must be reversed. The reversal is mandated by the absence of evidence as to Zeigler's comparative qualifications.
On remand, for the Board to escape liability, it must prove by a preponderance of evidence that Jamison would not have been hired because Zeigler was better qualified. As a consequence of our ruling, the remedies, penalties and proposed damages prescribed by the Director are vacated, with those issues to be resolved if, on remand, liability for retaliation is determined. We also vacate our grant of leave to appeal the pain and suffering damages awarded by the ALJ.[3] The stay is continued pending resolution by this court.
*452 Affirmed in part; reversed in part; and remanded for further proceedings. The proceedings before the ALJ shall be completed within 45 days of the date of this opinion. The Director shall complete any review within the time prescribed by statute. We retain jurisdiction.
NOTES
[1] The Director also levied a $5000 fine and remanded to the ALJ to consider a monetary award for pain and suffering engendered by the retaliation. Currently, the initial decision of the ALJ's monetary award is pending before the Director. Due to a change in Directors, a final decision has not issued.
[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[3] The Director's decision included a remand to the ALJ to consider a monetary award for pain and suffering engendered by the retaliatory conduct. After granting leave to appeal to both parties, we extended our consideration to the issue of the monetary award rendered by the ALJ, but not, at that time, reviewed by the Director. Our ruling precludes the necessity for considering that issue.