ALITO, Circuit Judge,
concurring and dissenting.
I concur in the judgment except insofar as it reinstates the jury’s award of front pay. I agree with the majority that a reasonable jury could have found that CNA would not have launched its investigation of the plaintiff’s gasoline vouchers were it not for her complaints of discrimination. Both the tim *208 ing of the investigation and CNA’s failure to investigate other employees who reported low gasoline mileage give rise to an inference of retaliation. I recognize that, of the low-mileage employees, the plaintiffs record was apparently one of, if not the very, worst,[1] and this is certainly a fact that I would have taken into account if I had been the trier of fact. Nevertheless, I think that, even assuming that the plaintiff bore the burden of persuasion with respect to the question whether retaliation was a determinative factor in the discharge decision (a question I discuss below), a reasonable jury could have found that it was.
A reasonable jury could not have found, however, that the plaintiff did not falsify her vouchers. Driving a compact car with an EPA-estimated gas mileage of 23 miles per gallon, she reported gas mileage, over a five-year period, that was far, far lower, reaching a nadir of three miles per gallon for one reporting period. She offered a host of excuses for her low mileage, but these were either inherently dubious[2] or were discredited by CNA’s investigation.[3] For example, although the plaintiff suggested that her low mileage might be attributable to mechanical problems with her car (she said that the ear “ran rough”), when the car was test driven it achieved 24 to 27 miles per gallon. Most damning was the plaintiffs submission of “receipts” for gas purchases that she herself wrote up. The mileage that she reported for particular periods was inversely proportional to the number of these suspicious “receipts” that she submitted. In 1984, when she submitted an average of two to three such “receipts” per expense period, her reported mileage was 11 to 13 miles per gallon. In 1985, she submitted an average of three to four such “receipts” per period, and her mileage sank to 10 miles per gallon. In 1986, when she averaged four such “receipts” per period, her mileage fell further to 7 miles per gallon. And finally, in 1987, when she reached an average of five such “receipts” per period, her mileage plummeted to 6 miles per gallon. As the district court observed, the proof of the. plaintiffs pilfering was “overwhelming.”
A reasonable jury likewise could not have found that CNA did not have a policy of firing employees who were proven to have stolen from the company. Employers do not routinely tolerate employees who are proven to have stolen from them; CNA offered evidence that it had a blanket policy of firing such employees; and I am aware of no direct evidence to the contrary. The majority suggests, however, that the absence of such a policy can be inferred from the fact that CNA approved the plaintiffs expense reports for some time without launching an investigation and the fact that CNA did not investigate other employees who reported very low mileage. This reasoning' overlooks the important difference between the failure to investigate suspicious conduct, which may result from lax administrative controls, and the toleration of proven theft. Once the plaintiff was investigated, CNA was confronted with what the district court aptly described as “overwhelming” proof of her theft. In my judgment, a reasonable jury could not have inferred from CNA’s failure to investigate suspicious conduct that it was CNA’s policy to tolerate proven theft.
Because it is CNA’s policy to fire employees, such as the plaintiff, who are caught stealing from the company, the plaintiff is not entitled to reinstatement or front pay. In McKennon v. Nashville Banner Publishing Co., — U.S. -, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court held that an employer who discharges an employee for a discriminatory reason is liable under *209 the federal Age Discrimination in Employment Act even though the employer discovers after the action is taken that it has a different, legitimate reason for the same action. The Court observed, however, that in such a case “as a general rule ... neither reinstatement nor front pay is appropriate.” Id. at -, 115 S.Ct. at 886. The Court explained: “It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.” Id. I think that this teaching would be controlling here if this case rested on federal rather than state law.
The majority, however, facilely dismisses the teaching of McKennon as applicable only in “after-acquired” evidence cases, that is, cases in which the evidence of the legitimate reason for discharge is acquired after the adverse employment decision is taken. This reasoning does not seem to me to make any sense. Consider the following two cases. In Case A, which is analogous to McKennon, the employer discharges an employee for a discriminatory reason and then, when sued or threatened with suit, launches an investigation of the employee and discovers a legitimate reason for discharge. In Case B, which is comparable to this case, the same employer, acting with the same discriminatory motive, targets the same employee for investigation before firing him and then discovers, as a result of the investigation, the same legitimate ground for termination. In Case A, the employee, under McKennon, would not be entitled to reinstatement or front pay, and I cannot think of any good reason for treating the employee in Case B more favorably than the employee in Case A.[4]
While McKennon is not directly controlling here because this case is based on the New Jersey Law Against Discrimination (“LAD”) rather than federal anti-discrimination , law, T think that the New Jersey Supreme Court would follow McKennon, see Miller v. Beneficial Management Corp., 855 F.Supp. 691, 715-17 (D.N.J.1994); Massey v. Trump’s Castle Hotel and Casino, 828 F.Supp. 314, 324 (D.N.J.1993), or would adopt some related rule limiting a plaintiffs entitlement to reinstatement or front pay in cases where a legitimate reason for discharge is discovered after the employee is wrongfully terminatéd or targeted for investigation, (in an extreme case — say, the investigation uncovers, not petty chiselling on expense vouchers, but massive embezzlement — ordering reinstatement or front pay would be preposterous.)
One other aspect of the majority opinion bears comment. The majority appears to hold that the standards set out in Jamison v. Rockaway Township Bd. of Educ., 242 N.J.Super. 436, 445, 577 A.2d 177, 182 (App.Div.1990), apply in all LAD retaliation eases. Jamison itself, however, takes pains to limit its holding to cases involving the failure to promote, see 242 N.J.Super. at 446-47, 577 A2d at 182-83, and the plaintiff argues strenuously that it does not apply here. While it may be that the New Jersey Supreme Court will ultimately hold that Jami-son governs all LAD retaliation cases, it has not done so yet,[5] and I see no need for us to venture a prediction on this question, because I think that the result here would be the same whether Jamison applies or not.
Under Jamison, as I understand it, once the employer satisfies its burden of production under the second step of the McDonnell *210 Douglas scheme, the plaintiff must then show that retaliation was a motivating factor in the -challenged action, not that it was the sole or a determinative cause.[6] -Then, the burden of persuasion switches to the employer to prove by a preponderance of the evidence that retaliation was not a determinative cause.
Under the federal scheme, which I take it. would apply if Jamison does not, see McKenna v. Pacific Rail Service, 32 F.3d 820 (3rd Cir.1994), once the employer satisfies its burden of production under the second step of McDonnell Douglas, and assuming the case does not call for special treatment under Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), it would then be up to the plaintiff to prove by a preponderance of the evidence, using direct or indirect proof, •that retaliation was a determinative cause of the challenged action. See Miller v. CIGNA Corp., 47 F.3d 586, 598 (3rd Cir.1995) (in banc). Thus, the difference between the two schemes concerns the allocation of the risk of non-persuasion on the question whether retaliation was a determinative cause. In this case, I think that whoever had that burden, the evidence was sufficient to prove that the investigation was begun for a retaliatory reason and was thus a determinative cause of the plaintiffs termination. Accordingly, it seems to me to be both unnecessary and imprudent for this panel to make a prediction on this point.

. See App. 437 (showing that over a period of three quarters the plaintiff's average mileage was nearly three times less than that of the closest coworker).

. The plaintiff said that children stole gas from her tank, but it seems most unlikely that, although no one was apparently ever apprehended while carrying out these alleged thefts, enough gas could be stolen from her car over a five-year period to account for the extremely low mileage figures that she reported.

.With respect to the plaintiff's claim that her practice of idling the car could have produced her low mileage figures, see App. 539, 1339. With respect to her claim that these figures resulted from the stop-and-go driving required by her job, see App. 1210-11 (two other employees with similar jobs reported much higher mileage).

. In an effort to distinguish the present case from an "after-acquired evidence” case, the majority relies on a passage from our court's opinion in Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1228 (3rd Cir., 1994), which pre-dates McKennon. This passage, however, is totally in-apposite, since it deals with the question of liability in an “after-acquired" evidence case, not with the question of reinstatement or front pay.

. Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 570 A.2d 903 (1990), on which the majority appears to rely (see maj. op. at 204 n. 17), Is clearly distinguishable, since it applies only to "a gender-discrimination claim based on the payment of unequal wages for the performance of substantially equal work” and was based on an analogy to the standards and methodology of the federal Equal Pay Act. See 118 N.J. at 109-110, 570 A.2d at 913.
Although the plaintiff claims to find support for her position in Rendine v. Pantzer, 141 N.J. 292, 311, 661 A.2d 1202, 1214 (1995), I am reluctant to read too much into the state supreme court’s brief treatment of the issue.

. The precise language of Jamison, 242 N.J.Super. at 445, 577 A.2d at 182, is that the plaintiff must prove that "the articulated reason, is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." While this language might be read in isolation to mean that the plaintiff must show that retaliation was a determinative cause of the challenged action, this reading would render the next step nonsensical. At the next step, the employer must prove that retaliation was not a determinative cause, i.e., that "the adverse action would have been taken regardless of retaliatory intent." 242 NJ.Super. at 446, 577 A.2d at 182. Obviously, it would make no sense to require the employee to prove by a preponderance of the evidence that retaliation was a determinative cause and then require the employer to prove by a preponderance that it was not.