**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4430
_____

MCDONALD JOSEPH,

Appellant

v.

NEW JERSEY TRANSIT RAIL OPERATIONS INC.;
NEW JERSEY TRANSIT, INC; PAUL DECOLA; LELAND PARSONS;
WILLIAM TIDD
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action 2:12-cv-01600)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2014
_____

Before: McKEE, *Chief Judge*, SMITH, and SHWARTZ, *Circuit Judges*.

(Filed: September 24, 2014)

_____

OPINION
_____

MCKEE, *Circuit Judge*

Plaintiff McDonald Joseph appeals the District Court's grant of summary

judgment for defendants in the action Joseph filed against them alleging racially motivated employment discrimination. For the reasons that follow, we will affirm the judgment of the District Court.[1]

## I.

As we write only for the parties who are familiar with the facts and procedural history, we will set forth only those facts necessary to our conclusion.

A two-day disciplinary hearing was held following an incident relating to Joseph's alleged misuse of a machine, called the 801, which was designed to construct and maintain railroads.  Joseph's union represented him during that hearing. The Chief Track Engineer, Bruce Wigod (not a defendant in this case), made the decision to terminate Joseph after reviewing the hearing transcript and consulting with Tidd and Parsons.[2] Wigod explained that he made the decision based on the following factors: 1) Joseph's disciplinary history of insubordination, 2) the current charge of insubordination (Joseph was asked for a statement about the incident and refused to provide it), 3) unauthorized use of a cell phone, 4) leaving the machine unattended, and 5) accusing his supervisor of sabotaging the machine. The last factor was considered the most egregious.

---

[1]  The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.

[2] Joseph was replaced with a Hispanic male.

Joseph filed this suit against NJ Transit, DeCola, Parsons and Tidd[3] for violation of 42 U.S.C. § 1981, and violations of the New Jersey Law Against Discrimination ("NJ LAD"). He alleged that he was discriminated against and retaliated against on the basis of race.

## II.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. We review the facts in the light most favorable to the non-moving party. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013). Our review of the District Court's grant of summary judgment is plenary. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).

## III.

Joseph raises several issues on appeal. He argues that the District Court erred by misapplying the law by ignoring a subordinate bias or "cat's paw" theory of liability that his termination was set into motion by DeCola's sabotage of the 801, improperly making a factual determination that the 801 machine rolled because Joseph left it unattended, and applying the wrong standard in considering claims against the individual defendants. Joseph also argues that the record supports a finding of retaliation, that the fact that he was replaced with a Hispanic male helps him prove his prima facie case, and that the individual defendants should be personally liable under the NJ LAD for aiding and

---

[3] DeCola was the Track Supervisor at NJ Transit. Parsons was a Production Engineer supervised by Williams Tidd, Director of Rail Infrastructure Construction.

3

abetting discrimination. However, all of these arguments boil down to whether Joseph presented evidence of discriminatory or retaliatory motive by any defendant. We conclude that he did not produce such evidence and that the District Court did not err in granting summary judgment in favor of all defendants on all claims.

New Jersey uses the *McDonnell Douglas* framework to assess discriminatory discharge claims under the NJ LAD. *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002). To establish a prima facie case of discriminatory discharge under the NJ LAD or §§ 1981 & 1983, Joseph must demonstrate: (1) that he is a member of a protected class; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010).

Joseph argues that the District Court failed to consider a "cat's paw" or subordinate bias theory of discrimination, and that Wigod's decision to terminate Joseph was tainted by DeCola's racially motivated conduct towards him. "[W]e have held that discriminatory comments by nondecisionmakers . . . may properly be used to build a circumstantial case of discrimination." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995). However, because there is no evidence that DeCola was motivated by discriminatory animus, there is no evidence that Wigod's decision to terminate was tainted by discrimination.

The only evidence that could even suggest racial animus is evidence that Tidd said, "I don't know what's wrong with you people." Tidd was not involved in the

4

incident with the rolling 801 machine.  Some courts "have determined that the phrase 'you people' is too ambiguous to constitute direct evidence of discrimination when used in isolation, as it was here." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010).  Although we do not doubt that racial animus will sometimes lurk beneath the surface of this phrase, something more than speculation is needed to connect those dots. Here, "[e]ven if we were persuaded that the use of the phrase 'you people' in this context would constitute direct evidence . . . [Joseph] ha[s] not shown that [NJ Transit]'s decisionmaker[—Wigod—]relied on [Joseph's] race" in deciding to terminate him.  *Id*. at 270.

Joseph's retaliation claim is also flawed.  Both Title VII and the NJ LAD "make[] retaliatory discrimination an unlawful employment practice." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 198 (3d Cir. 1996). Retaliation claims under Title VII and the NJ LAD require the plaintiff to satisfy the same elements. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (holding that the same analysis applied to plaintiffs' retaliation claims under Title VII and the NJ LAD).  "To establish a prima facie case of retaliation, an employee must show by a preponderance of the evidence that (1) he or she 'engaged in protected activity known to the employer;' (2) he or she thereafter was 'subjected to an adverse employment decision by the employers;' and (3) there was a 'casual link' between the protected activity and adverse employment decision." *Delli Santi*, 88 F.3d at 198. (quoting *Jamison v. Rockaway Twp. Bd. of Educ.*, 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990)).

The District Court assumed that Joseph engaged in a protected activity, but it concluded that there was no evidence to show causation. "[O]ur case law has focused on two main factors in finding the casual link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). We agree with the District Court that there is no evidence to show causation, because there is no evidence that links Joseph's question to DeCola, "is it because I'm Black?" to the incident involving the 801 that led to Joseph's disciplinary hearing.

According to Joseph, DeCola never responded to this statement, and there is no evidence suggesting that DeCola or anyone else acted on it. The only evidence of causation was the timing between that conversation and the incident with the 801 machine. That is not enough on its own to establish causation, and Joseph has presented no other evidence of discriminatory animus to suggest causation. Furthermore, Wigod made the decision to terminate Joseph several months later, and he was not even aware that Joseph asked DeCola that question. There is simply no evidence that the decision to terminate Joseph was related to what Joseph said to DeCola. Finally, Joseph's arguments regarding antagonism are similarly unavailing because he was unable to work on the 801 machine both before and after he engaged in the protected activity.

### III.

For the reasons set forth above, we will affirm the judgment of the District Court.