**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1881-22

IN THE MATTER OF JOHN
SHAW, FIRE LIEUTENANT
(PM1067V), BELLEVILLE.

_____

Argued March 11, 2024 – Decided April 2, 2024

Before Judges Sabatino, Marczyk, and Chase.

On appeal from the New Jersey Civil Service Commission, Docket No. 2022-1186.

Robert K. Chewning argued the cause for appellant John Shaw (McLaughlin & Nardi, LLC, attorneys; Maurice W. McLaughlin and Robert K. Chewning, on the briefs).

David Lawrence Epstein argued the cause for respondent Township of Belleville (Post Polak, PA, attorneys; David Lawrence Epstein, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Levi Malcolm Klinger-Christiansen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner John Shaw appeals from the Civil Service Commission's ("CSC") February 1, 2023 final agency decision affirming the Township of Belleville's decision to remove his name from the list of eligible candidates for the position of fire lieutenant. Based on our review of the record and the applicable legal principles, we affirm.

I.

Shaw has been a firefighter for Belleville since approximately 2008. In 2017, Shaw took and passed a promotional examination for fire lieutenant. Four names, including Shaw's as the first listed veteran eligible, were ultimately certified to Belleville in September 2021. Belleville subsequently requested the removal of Shaw's name based on an unsatisfactory employment history and appointed the remaining three individuals on October 1, 2021. Belleville asserted Shaw had an extensive disciplinary history including multiple suspensions.

Shaw appealed to the CSC, claiming his disciplinary history was not sufficient to justify his removal from the list. He further asserted the actual reason he was removed from the list was due to his political affiliation with the Democratic Party because the majority of the Fire Department and the mayor were associated with the Republican Party.

2

A-1881-22

During Shaw's time as a firefighter, there were numerous instances where he was suspended, disciplined, admonished, reprimanded, or received poor evaluations from his superiors stemming from work-related incidents and off-duty occurrences, including two arrests. We need not recount every disciplinary matter involving Shaw,[1] but we highlight certain incidents, including those relied upon by the CSC in determining Belleville appropriately removed Shaw from the lieutenant's list.

In October 2011, Shaw changed a route from one hospital to a different hospital while transporting a patient without communication or notice to dispatch or a supervisor. The incident was memorialized in a memo. In August 2011, Shaw refused to respond to a call for help during Hurricane Irene. Shaw claimed that it was not his unit's turn to take a call. The Battalion Chief issued a written reprimand and added it to his personnel file.[2]

---

[1] Shaw questions Belleville's inclusion of certain disciplinary matters before the CSC. He asserted before the CSC there were "only eight" disciplinary matters in his record, as opposed to approximately seventeen incidents claimed by Belleville. Belleville counters, "Shaw's strained and unconvincing attempts to downplay, minimize and dismiss his extensive negative history . . . reinforce[s] . . . the conclusion that it was right to remove him from consideration for a permanent appointment to a leadership role." Belleville further notes that Shaw did not appeal any of the disciplinary matters in his file.

[2] Ultimately, after a "several" minute discussion, Shaw responded to the call.

A-1881-22

In December 2011, Shaw was involved in a verbal altercation with another firefighter, resulting in a sustained violation of protocols for professional conduct and forfeiture of four vacation days.[3]

In February 2015, Shaw struck a parked car while operating a fire truck. After Belleville investigated the accident, Shaw was determined to have been responsible. Again, in February 2015, Shaw struck a parked car while driving a fire truck. For these incidents, he was issued a notice of corrective action in April 2015, that implemented a three-month probationary period requiring him to maintain an acceptable level of performance or face further discipline or termination. Another incident occurred in May 2016, when Shaw was moving an ambulance out of a bay. He neglected to check whether equipment attached to the ambulance was clear, and as a result, the equipment collided with the building structure causing damage to the ambulance. In March 2017, Shaw was again involved in a motor vehicle accident that caused damage to a compartment door of one of the fire trucks. As a result, Shaw's driving assignments were revoked, and he was suspended for two, twenty-four-hour shifts.

---

[3] The CSC notes, contrary to Shaw's assertion, that a forfeiture is considered a suspension.

On three separate occasions between February and March 2015, Shaw failed to timely respond to fire investigations while on call as a Belleville arson investigator. In November 2015, Shaw's ongoing performance and work attitude problems led to his indefinite suspension from the Arson Bureau. The Arson Unit Commander stated, "Investigator Shaw shows zero respect for authority, does not follow the chain of command, does not follow instructions and has a lack of responsibility when asked to do simple tasks."

In December 2016, the Police Department of Austin, Texas notified the Belleville Fire Department that Shaw had been arrested for public intoxication and failure to obey a lawful order of a law enforcement officer. As a result of this incident, despite the underlying criminal charges ultimately being dismissed, administrative charges were instituted against Shaw for conduct unbecoming of a public employee, N.J.A.C. 4A:2-2.3(a)(6), among other charges. It is not clear from the record, what, if any suspension, Shaw faced for this incident. However, he was permanently stripped of his Arson Unit duties.

In May 2017, Shaw was again arrested—this time in Belmar—and charged with obstructing the administration of law, N.J.S.A. 2C:29-l, and disorderly conduct, N.J.S.A. 2C:33-2. He was described by the reporting officer as "uncooperative and disrespectful." Additionally, Shaw identified himself as a

5

police officer. The officers inspected his wallet and discovered he was a fireman. Shaw admitted to the officer he was in fact a fireman.[4] Shaw then told the officers that there were only two ways for the situation to end, to let him leave out the back door or that he would get a lawyer to take care of this. Belmar Police told him he should get a lawyer because he was under arrest. Belmar Police notified Belleville of the arrest.

Shaw eventually pled guilty to the charges[5] and was also administratively charged with insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming a public employee, N.J.A.C. 4A-2-2.3(a)(6); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12), and was suspended for sixteen, twenty-four-hour working days. In June 2017, because Shaw's behavior was "progressing in a negative and inappropriate manner," he was ordered to attend a fitness for duty evaluation. Shaw passed this examination.

Shaw notes that despite his disciplinary history, he often worked as an "acting" lieutenant from 2013 until Belleville removed him from the eligible list in 2021. Shaw asserts he worked as an acting lieutenant over one hundred times

---

[4] Shaw had previously worked as a police officer.

[5] Shaw pled guilty subject to a conditional dismissal after a one-year probationary period. According to Shaw, the charges were eventually dismissed and expunged.

A-1881-22

over this period.  He notes he performed all duties of lieutenant during these shifts and received pay equivalent to a lieutenant.[6]

Shaw contends the actual motivation to remove him from the lieutenant's list was his political activities.  He has been affiliated with the Democratic Party for over ten years.  He campaigned for Democratic officials at the federal, state, and county levels and served as a member of the Democratic County Committee in Ocean County.  He asserts the majority of the Belleville Fire Department are affiliated with the Republican Party, and the mayor supported a Republican candidate for governor.[7]

Shaw claims that when he protested at a rally for a Republican official in March 2020, a now-retired Belleville fire lieutenant berated him for protesting, called him a derogatory name, and attempted to have him arrested.  Thereafter, he claims other unnamed Belleville firefighters called him derogatory names based on his Democratic affiliation.

In September 2021, four individuals, including Shaw, were certified to Belleville for the lieutenant position.  Belleville then requested to remove

[6] Bellville removed Shaw from the acting lieutenant list in March 2021.  As noted below, he was removed from the promotional list, which is the subject of this appeal, in October 2021.

[7] The record does not indicate the political affiliation of the mayor.

Shaw's name from the list based on his unsatisfactory employment history, and the remaining three were appointed in October 2021. In November 2021, Shaw wrote a letter to the CSC appealing Belleville's action in removing his name from the promotional list for lieutenant. On February 1, 2023, the CSC, as discussed more fully below, issued its final administrative action denying Shaw's appeal and upholding Belleville's removal of Shaw from the eligible list.

II.

Shaw argues the CSC's final administrative action was arbitrary, capricious, and unreasonable and ignored competent evidence that established he was qualified for the position of fire lieutenant. Shaw further argues Belleville's true motivation for removing him was because of his political affiliation. He further asserts his disciplinary history was remote in time and did not justify his removal from the list. Moreover, he contends that if Belleville had concerns about his disciplinary history, he would not have been permitted to serve as an acting lieutenant as often as he did. Additionally, Shaw argues the CSC failed to refer this matter to the Office of Administrative Law to resolve the disputed material facts regarding his political retaliation claim.

Our scope of review of a final administrative action of an agency is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150,

157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). The standard of review applicable to determinations of administrative agencies, including the CSC, is whether there has been "a showing that it was arbitrary, capricious[,] or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." In re Hendrickson, 235 N.J. 145, 160 (2018) (quoting State v. Roth, 95 N.J. 334, 364 (1984)). The party challenging the final administrative action has the burden of demonstrating grounds for reversal. Lavezzi v. State, 219 N.J. 163, 171 (2014).

On appeal, the judicial role in reviewing an administrative action is generally limited to three inquires:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars, 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

9

This well-known standard has engrained within it a degree of deference that commands we do not substitute our judgment in place of the agency's merely because we might have come to a different outcome. See Hendrickson, 235 N.J. at 150. However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . .'" Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Our review of a "strictly legal issue" is de novo. In re Langan Eng'g. & Env't Servs., Inc., 425 N.J. Super. 577, 581 (App. Div. 2012) (quoting Utley, 194 N.J. at 551).

The New Jersey Constitution provides in pertinent part that "[a]ppointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive . . . ." N.J. Const. art. VII, § 1, ¶ 2. The Civil Service Act ("CSA"), N.J.S.A. 11A:1-1 to 12-6, and regulations promulgated pursuant to the CSA, implement the policies underlying this constitutional provision. In re Foglio, 207 N.J. 38, 44 (2011) (citing N.J.S.A. 11A:2-6(d)). The CSA and the regulations generally provide for merit-based appointments to positions in the civil service. Ibid.

10

If there is a vacancy in a civil service position for which an examination is required, the CSA "provides for an examination process." Ibid. (citing N.J.S.A. 11A:4-2). "When an examination is announced, minimum qualifications for the position must be posted." Ibid. (citing N.J.A.C. 4A:4-2.1). "After the examination, an eligible list is published ranking all passing candidates by score, with special ranking rules for veterans and for tie scores." Ibid. (citing N.J.A.C. 4A:4-3.2). If "an appointing authority requests a list of candidates for a vacant position, the [CSC] will issue a certification 'containing the names and addresses of the eligibles with the highest rankings on the appropriate list.'" Ibid. (quoting N.J.A.C. 4A:4-4.2(a)).

The CSC has promulgated regulations that permit names to be removed from an eligible list for a variety of reasons that may disqualify the candidate for appointment. N.J.A.C. 4A:4-4.7; N.J.A.C. 4A:4-6.1. Pertinent to this appeal, N.J.A.C. 4A:4-4.7(a)(1), in conjunction with N.J.A.C. 4A:4-6.1, allows the removal of "[t]he name of an eligible" from an employment list when the applicant "[l]acks the job requirements," N.J.A.C. 4A:4-6.1(a)(1); "[h]as a prior employment history which relates adversely to the title," N.J.A.C. 4A:4-6.1(a)(7); or for "[o]ther sufficient reasons," N.J.A.C. 4A:4-6.1(a)(9). N.J.A.C. 4A:4-6.3(b), in conjunction with N.J.A.C. 4A:4–4.7(d), provides that Shaw has

11

the burden of proof to show that Belleville's decision to remove his name from the eligible list was in error.

The CSC found Shaw's disciplinary history was sufficient to support his removal from the eligible list based in part on his sixteen, twenty-four-hour working-day suspension stemming from his Belmar arrest in 2017.[8] Moreover, in addressing Shaw's argument his disciplinary history was remote, the CSC noted "this suspension occurred in 2018, after the July 2017 closing date for the subject examination, and less than three and one-half years prior to the subject certification . . . in September 2021." Furthermore, the CSC noted he had four working-day suspensions in 2012 and 2017.

The CSC observed, "[Shaw's] employment history which includes a recent major disciplinary action and several minor disciplinary actions clearly relates adversely to the title sought." Additionally, it noted "the position of [f]ire [l]ieutenant is reserved for employees who exhibit leadership skills, a positive work ethic, and respect for the rules [and] regulations," and Shaw's recent major disciplinary history reflects "a lack of respect for such tenets."

---

[8] The CSC noted this sixteen, twenty-four-hour working-day suspension is the equivalent of forty-eight working days. Regardless, the CSC noted that even a sixteen working-day suspension is "significant major discipline" that would be sufficient to support Shaw's removal from the lieutenant's list.

In addressing Shaw's argument that his work as an acting lieutenant[9] evidenced his qualification for the permanent lieutenant position, the CSC noted that "although [Shaw] served as '[a]cting' [f]ire [l]ieutenant for occasional shifts for several years, this does not establish that the use of his disciplinary history was inappropriate." It further noted, "the fact [Shaw] may have been performing the duties of the subject title on an 'acting' basis did not mean that the appointing authority did not have sufficient justification to find that [Shaw's] disciplinary history made him not suitable for a permanent appointment in the subject title."

Lastly, the CSC rejected Shaw's claim that his removal was political retaliation based on his party affiliation. It noted Shaw did not provide the names of any individuals who engaged in harassing behavior other than a retired lieutenant. It characterized Shaw's contentions as "tenuous allegations" and that he failed to produce any "evidence or documentation that anyone with the authority to appoint or remove him from the subject eligible list engaged in any discriminatory behavior." The CSC further noted the fact that Shaw was in a different political party from others in the fire department "is not evidence that [he] was treated differently" when considered for appointment. In any event,

---

[9] Belleville notes the acting lieutenant position is not recognized by the CSC, and it is a per diem position utilized by the municipality as a budgetary measure to control overtime and to compensate for inadequate manpower.

the CSC found Shaw's significant disciplinary record provided a legitimate basis for his removal from the list. As such, the Commission determined there were no material issues of fact requiring an administrative hearing and denied Shaw's appeal.

We conclude the CSC did not act in an arbitrary, capricious, or unreasonable manner in denying Shaw's application. We affirm substantially for the reasons set forth in the CSC's decision. We add the following.

Shaw's disciplinary history as documented in the record, coupled with his negative interactions with authority, provided ample support for the CSC's decision that Belleville appropriately removed Shaw from the eligible list. Specifically, substantial credible evidence established Shaw was arrested in 2016 and 2017. The most recent incident resulted in a significant suspension that was not, contrary to his arguments, remote in time in relation to the lieutenant's test and the certification of the eligible list. And even if the arrests were not considered, there are more than sufficient other disciplinary and conduct-related matters in Shaw's extensive record to justify the CSC's decision. Moreover, Shaw serving as an acting lieutenant does not necessarily mean that he is suitable to be promoted to the permanent title. In fact, prior to being

14

removed from the subject lieutenant list, Shaw was removed from acting lieutenant duties because of his actions.

We next consider Shaw's claim for political retaliation. The four-step test to evaluate a political retaliation claim is articulated in Jamison v. Rockaway Township Board of Education, 242 N.J. Super. 436 (App. Div. 1990). Under that test, first, the claimant must establish a prima facie showing of retaliation by demonstrating a protected activity led to an adverse employment decision. Id. at 445. If that is done, "the burden of going forward, but not the burden of persuasion, shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action." Ibid. Then, the claimant must show the retaliatory reason motivated the employer's action by demonstrating "that the articulated reason is a pretext for the retaliation . . . ." Ibid. If the claimant makes such a showing, a presumption of retaliation is created that the employer must rebut by proving by a preponderance of the evidence that the action would have taken place regardless of any retaliatory intent. Id. at 446.

Although the CSC did not specifically reference this case law, it essentially determined Shaw did not present a prima facie case for retaliation. Like the CSC, we are unconvinced Shaw has demonstrated that his protected activity was a substantial motivating factor for his removal from the lieutenant

15

list. There is no suggestion the retired lieutenant who confronted Shaw at the political rally was at all involved in him being removed from the list. Moreover, Shaw did not present facts that the decision makers involved in removing him from the list engaged in harassment or political retaliation. As the CSC concluded, Shaw's substantial disciplinary record provided Belleville a legitimate basis for his removal from the list.

N.J.A.C. 4A:2-1.1(d) provides in pertinent part, "[e]xcept where a hearing is required by law, this chapter or N.J.A.C. 4A:8, or where the [CSC] finds that a material and controlling dispute of fact exists that can only be resolved by a hearing, an appeal will be reviewed on a written record." See also In re Wiggins, 242 N.J. Super. 342, 345 (App. Div. 1990). This regulation leaves to the CSC the determination of whether there is a material dispute of fact. Wiggins held, "[t]he determination whether such a situation [necessitating a hearing] exists is one committed to the discretion of the [agency], and its decision will be affirmed unless it goes beyond the range of sound judgment." Id. at 345.

Here, the CSC appropriately determined a hearing was unnecessary based on the record, as Shaw failed to demonstrate a prima facie case. The CSC considered the facts in the record in a light most favorably to Shaw and,

nevertheless, found a hearing was unnecessary. We discern no basis to disturb that conclusion.

To the extent we have not specifically addressed any of Shaw's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1881-22