14 F.3d 596
 63 Empl. Prac. Dec. P 42,755
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sandra C. SHOPE, Plaintiff-Appellee,
v.
BOARD OF SUPERVISORS OF LOUDON COUNTY, Virginia; Timothy
Krawczel, Defendants-Appellants,
and
Memory Porter; Philip A. Bolen, former County
Administrator, Defendants.
 No. 92-2100.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 27, 1993.
Dec. 20, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 John J. Brandt, Slenker, Brandt, Jennings & Johnston; Robert A. Dybing, Shuford, Rubin & Gibney, for Appellants.
 John Bredehoft, Charlson & Bredehoft, P.C., for Appellee.
 John A. Gibney, Jr., Shuford, Rubin & Gibney, for Appellants.
 Elaine C. Bredehoft, Charlson & Bredehoft, P.C., for Appellee.
 ED.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 In this case we must ask whether sufficient evidence supports a jury determination that a female municipal employee resigned her position because of her supervisor's gender-motivated harassment. We held this case in abeyance pending the Supreme Court's decision in Harris v. Forklift Systems, Inc., 62 U.S.L.W. 4004 (U.S. Nov. 9, 1993). In light of Harris, we now affirm.
 
 
 2
 I. Plaintiff Sandra C. Shope became the chief of Housing Services for Loudoun County, Virginia in 1977 and held that position for thirteen years. In February 1989, Ms. Shope began working with a new supervisor, Timothy Krawczel. The relationship between the two deteriorated quickly, and Ms. Shope complained to Mr. Krawczel's superiors about his conduct several times during 1989. Mr. Krawczel, in turn, questioned Ms. Shope's performance, giving her the most negative performance review she received during her service as housing chief. The conflict between the two led to Ms. Shope's resignation in April 1990. She then filed this 42 U.S.C. Sec. 1983 action against both Loudoun County and Timothy Krawczel. In her complaint, Shope alleged that she had been subjected to sex discrimination in employment and sought compensatory damages for loss of her job and punitive damages for the harm inflicted on her by Mr. Krawczel.
 
 
 3
 At trial, Ms. Shope argued that Krawczel treated her poorly solely because she was a woman. Shope also contended that Krawczel's abusive conduct left her no choice but to resign because her working conditions were so demoralizing. After a four day trial, the jury found for Ms. Shope, awarding $650,000 in compensatory damages against the County and Mr. Krawczel and $25,000 in punitive damages against Mr. Krawczel alone.
 
 
 4
 On appeal, the County and Krawczel make three principal arguments. They contend that 1) Krawczel's actions did not amount to unlawful treatment based on gender, 2) Ms. Shope was not constructively discharged, and 3) the trial judge gave incorrect instructions on the proper standard governing Ms. Shope's claim. Finally, the County alone argues that it should not be liable to Ms. Shope because it did not have a policy or custom sanctioning whatever unlawful conduct may have occurred. We address each contention in turn, mindful that Ms. Shope received a favorable jury verdict and that questions of fact must be viewed in the light most favorable to her.
 
 II.
 
 5
 While admitting that Mr. Krawczel's conduct was rude, the County and Mr. Krawczel contend nonetheless that it was not motivated by Ms. Shope's gender. Instead, they see this as a case of two people who simply failed to get along because of a personality conflict. They contend that the unproductive working relationship leading to Ms. Shope's resignation stemmed from this personality conflict, not from any sexual harassment.
 
 
 6
 We disagree. Ms. Shope introduced ample evidence demonstrating that she faced difficult working conditions solely on account of her sex. The evidence before the jury revealed many instances where Krawczel's verbal disparagements of Ms. Shope focused on her gender. He once told her that she "looked ridiculous" in the dress she was wearing. At another time he told her she "shouldn't be such a soft woman." In yet another case, he said she was"too aggressive a woman" for the job. Krawczel twice called Ms. Shope a "stupid woman" and said "if you're a weak woman and you've got mental problems, then you just let somebody else come in here and do this job." On one occasion he even told her that "this is what you have to do, and I'm the boss at home and I'm going to be the boss here too." At times, his verbal attacks became almost physically abusive. Ms. Shope testified that Krawczel would sometimes come into her office, pound on the table, and stand very close to her while shouting in her face about her job performance.
 
 
 7
 Furthermore, the jury heard substantial evidence that Krawczel had problems with women generally, not just with Ms. Shope. Several witnesses offered testimony that Krawczel treated other female employees in a disparaging manner. One woman had even threatened to quit if Krawczel became her supervisor, and other testimony indicated that two secretaries did quit because of Mr. Krawczel's conduct. Indeed, Ms. Shope herself had enjoyed an excellent performance record for over ten years, and problems began only after Mr. Krawczel took over as her supervisor. Finally, at least one witness testified that Mr. Krawczel did not have the same rudeness problems with the men he supervised.
 
 
 8
 This evidence is the sort the Supreme Court recently indicated would suffice to make out a hostile working environment claim based on sex discrimination. In Harris v. Forklift Systems, Inc., 62 U.S.L.W. 4004 (U.S. Nov. 9, 1993), the female plaintiff sued her former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., claiming that her male boss had created a hostile working environment.* Among other things, the boss in Harris had called the plaintiff a "dumb ass woman," and said on another occasion, "You're a woman, what do you know." Harris, 62 U.S.L.W. at 4004. The Supreme Court found that such conduct could make a out a hostile working environment claim under Title VII and stated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 4005.
 
 
 9
 The testimony Ms. Shope introduced at trial touched on many of these factors and provided substantial evidence that could lead a reasonable factfinder to believe that Mr. Krawczel's treatment of Ms. Shope was caused by her gender. The district judge said as much in denying a new trial motion, stating "the evidence that the Court heard fully justified a jury in concluding that [Krawczel's] behavior constituted discrimination on the basis of gender and that it was appalling behavior." Likewise, the weight of that evidence gives us no basis for overturning the jury verdict in Ms. Shope's favor.
 
 III.
 
 10
 The County and Krawczel next contend that Ms. Shope was not constructively discharged and therefore may not recover any damages for loss of her job. Because Ms. Shope is claiming that loss as part of her damages, she must show that even though she was not actually discharged by Loudoun County, her difficult working conditions were intended to cause her resignation. The defendants contend that such a finding is not possible here because (1) Ms. Shope continued at her work for some time after the problems with Krawczel developed and even gave six weeks notice before she resigned her position, and (2) no evidence indicates Krawczel tried to push Ms. Shope into resigning.
 
 
 11
 We think Harris requires a contrary conclusion. Like Ms. Harris, Sandra Shope first tried to remedy the problems at work, and resigned only after it became clear that no improvements in the hostile sexual environment were forthcoming. See Harris, 62 U.S.L.W. at 4004 (plaintiff Harris first complained to her boss about his harassment and quit only after his conduct did not improve). On at least four separate occasions, Ms. Shope discussed Krawczel's conduct with his supervisors. At one point, she complained to the County Administrator of Krawczel's "abusive and demeaning and intimidating" conduct and stated that she "would not be able to continue under those circumstances." Yet Mr. Krawczel's supervisors never took steps to improve the situation. Similarly, when Ms. Shope complained directly to Krawczel about his conduct, he simply told her that if she could not handle the job she should "just let somebody else come in here and do" it. Based on this evidence, a reasonable jury could conclude that Krawczel was trying to drive Ms. Shope off the job and that she delayed resigning only because she hoped that his supervisors would take action to improve the situation or that Mr. Krawczel himself, if confronted, would begin to treat her in a non-abusive fashion. When neither occurred, Ms. Shope resigned and the jury could reasonably find that a resignation in these circumstances constituted a constructive discharge.
 
 IV.
 
 12
 The County and Mr. Krawczel also argue that the jury instructions erroneously conveyed the impression that the jury could find for Ms. Shope if any part of Mr. Krawczel's conduct was gender-motivated. The defendants argue that a proper instruction would have indicated that the challenged conduct would be unlawful only if gender were the "but for" cause of Mr. Krawczel's actions.
 
 
 13
 We agree that the jury instructions in this case could have been posed with more precision, though we note that the district court was without the substantial guidance of Harris v. Forklift Systems, Inc., 62 U.S.L.W. at 4004. Be that as it may, the instructions did put before the jury the ultimate question of whether Ms. Shope faced abusive treatment and was finally driven from her job because of her gender. We do not think that defendants experienced the kind of prejudice that would justify the considerable effort of a new trial. See FED. R. CIV. P. 61.
 
 V.
 
 14
 Finally, the County contends that because it had no policy or custom sanctioning whatever unlawful conduct may have occurred, it cannot be liable to Ms. Shope for any damages she incurred. The County points out that it had an express policy forbidding sexual harassment by its employees and argues that Ms. Shope never clearly indicated the type of problems she was having with Mr. Krawczel, making it impossible for the County to remedy the situation.
 
 
 15
 The evidence, however, suggests the contrary. Ms. Shope twice met with Milt Herd, Krawczel's immediate supervisor, to complain about Krawczel's "aggression" and "intimidation." Ms. Shope even wrote two separate memos to Mr. Herd detailing the problems she had with Mr. Krawczel. In one, she wrote that he "treats me in a harassing and intimidating way.... You know other women in the department have problems working with him also." Ms. Shope also met with Walter Smith, the head of personnel for the County, and told him of her problems with Mr. Krawczel. Finally, she met with Philip Bolen, the County Administrator. She informed Mr. Bolen that she had unsuccessfully tried to resolve her difficulties by talking to Mr. Krawczel and Mr. Herd. She also told him that other women in the department were having problems. Yet, none of these meetings inspired the County to take actions aimed at improving Mr. Krawczel's conduct. We cannot say that a jury confronted with this evidence would be remiss in concluding that the County's failure to act in the face of information repeatedly brought to its attention represented a policy or custom sanctioning the type of conduct at issue here.
 
 VI.
 
 16
 We find no merit in appellants' other assignments of error. For the foregoing reasons, the jury's verdict is
 
 
 17
 AFFIRMED.
 
 
 
 *
 Although Harris alleged a hostile working environment claim under Title VII, its holding is still important to theSec. 1983 suit before us because of the similarities between Title VII andSec. 1983 law in this area. Title VII standards for making out a sexual harassment claim have frequently been adopted by courts in Sec. 1983 litigation on the same issue. See Boutros v. Canton Regional Transit Auth., 997 F.2d 198, 202-03 (6th Cir.1993); Trautvetter v. Quick, 916 F.2d 1140, 1149 (7th Cir.1990); Rivera v. City of Wichita Falls, 665 F.2d 531, 534 n.4 (5th Cir. Unit A 1982)