284 N.J. Super. 543 (1995)
665 A.2d 1139
JOHN L. ROMANO, JR., PLAINTIFF-APPELLANT,
v.
BROWN & WILLIAMSON TOBACCO CORPORATION, DEFENDANT-RESPONDENT, AND ALBERT E. ROZEK, INDIVIDUALLY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1995.
Decided October 23, 1995.
*545 Before Judges SHEBELL, STERN and NEWMAN.
Linda B. Kenney argued the cause for appellant (Ms. Kenney, attorney, and of counsel; Gregory S. Schaer, on the brief).
Patrick M. Stanton argued the cause for respondent (Stanton, Hughes, Diana & Zucker, attorneys; Mark Diana, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiff, John L. Romano, Jr., appeals the dismissal on summary judgment of his complaint filed on August 21, 1992 against Brown & Williamson Tobacco Corporation, his former employer, *546 alleging: Count I: retaliatory discharge; Count II: unlawful employment discrimination based upon marital status; Count III: breach of employment contract to terminate for cause; Count IV: breach of an implied covenant of good faith and fair dealing; Count V: violation of a clear mandate of public policy by his having been discharged based upon his marital status; Count VI: negligent infliction of emotional distress; Count VII: spoliation of evidence/negligent supervision; Count VIII: punitive damages for willful, deliberate and intentional conduct. Defendant's counterclaims, alleging breach of the duty of loyalty, legal and equitable, intentional and negligent misrepresentation, and concealment and interference with a prospective economic advantage, remained viable after the dismissal of plaintiff's complaint. We granted leave to permit interlocutory review of the summary judgment orders terminating plaintiff's claims.
In 1981, during a business conference, plaintiff witnessed an incident in which a supervisor of Brown & Williamson allegedly sexually harassed Nancy Anderson, a fellow employee. Anderson filed a complaint with the company, which was investigated. The files pertaining to the investigation allegedly have been lost. An interview with plaintiff, which is pertinent to this action, was part of the lost investigation file.
In 1985, Anderson was fired, allegedly due to poor job performance. Thereafter, she filed a lawsuit against Brown & Williamson alleging several incidents of sexual harassment, including the one that plaintiff had witnessed. Plaintiff was interviewed on behalf of his employer on several occasions while suit was pending as he was a critical witness for the company. Betty Foley, defendant's in-house counsel interviewed plaintiff in 1986, 1990, and twice in 1991. In October 1991, three weeks prior to the trial, outside defense trial counsel interviewed plaintiff and then contacted Foley, because of the discrepancy between plaintiff's statement to him and what Foley had related plaintiff would say. Thereafter, Foley accused plaintiff of changing his testimony to an account of the incident that was more favorable to Anderson.
*547 Plaintiff maintained then, as he does now, that his version has never changed. Foley, however, asserts that plaintiff had always given an account that limited the severity of the incident until 1991, when she claims that plaintiff then added that Anderson's supervisor had pulled open the top of Anderson's dress and plunged his nose in. Foley never wrote any notes or memos of plaintiff's statements. The original investigation file had a written account of plaintiff's version that Foley reviewed once or twice for about a minute each time. According to Foley, plaintiff's "changed" testimony and the climate of public sentiment following the Clarence Thomas confirmation hearings motivated her to recommend that the company settle the Anderson litigation. Plaintiff never testified during that action. On the second day of trial, the company settled for an undisclosed amount. Defendant claims the settlement was greater than it would have been were it not for plaintiff's changed version of the incident.
Anderson received her settlement check on November 1, 1991. On November 27, 1991, she and plaintiff were married. They had been friends while they both were employed by the defendant, had remained friendly after Anderson's discharge, and began dating in 1986 or 1987. They became engaged in 1989, plaintiff gave her a ring in 1990, and they married in 1991. Plaintiff asserts that the two have never spoken about the case, except when he told her that he might be called as a witness, and that Anderson has never disclosed the amount of settlement to him.
Throughout the courtship, plaintiff did not refer to Anderson by name at work, but rather as his "ladyfriend" and later on as "Julie," which he thought to be her middle name. Plaintiff chose not to disclose this relationship to defendant, despite the feeling that he might get in trouble for not telling. In February of 1992, amid rumors that plaintiff had married Anderson, defendant conducted an investigation.
Plaintiff was terminated on February 13, 1992, after 28 years of service. The company gave the following reason for the discharge:

*548 Despite the fact that you were a material witness with respect to a substantial claim by Ms. Anderson against the Company, you failed to disclose the fact that you were engaged to be married to Ms. Anderson. Instead, you took steps to conceal your relationship with Ms. Anderson from Brown & Williamson, including misrepresenting your relationship to your supervisors. Less than one month after Brown & Williamson paid a substantial financial settlement to Ms. Anderson, you and she were married. Again, you concealed the fact that the woman whom you married was in fact Ms. Anderson....
Your conduct in failing to disclose and concealing your relationship with Ms. Anderson and making false statements to your supervisors breached your duties as a Brown & Williamson employee, constituted a conflict of interest and violated Brown & Williamson's Standards of Business Conduct. For this reason, your employment has been terminated.
I will also note that the settlement of Ms. Anderson's claim was based largely on account of the incident between Ms. Anderson and her supervisor. I understand that your recollection of this incident changed substantially in favor of Ms. Anderson as trial approached. It is also my understanding that had you not concealed your relationship with Ms. Anderson and changed your account of the incident substantially in her favor, Brown & Williamson would not have settled her claim as it did. This resulted in substantial damages to Brown & Williamson.
Plaintiff's first point on appeal is that the trial court erred in granting summary judgment dismissing Count I of plaintiff's complaint, which alleged retaliatory termination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-12(d). The trial court found that plaintiff failed to establish a prima facie case of retaliation, specifically by failing to demonstrate a causal connection between the protected activity and the retaliation. This finding was in error.
The New Jersey LAD, N.J.S.A. 10:5-12(d) states that it shall be employment discrimination for any person to take reprisals
against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threatened or interfere with any person in the exercise of enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.
[Emphasis added.]
To establish a prima facie case of retaliation under LAD, Romano had to show that 1) he was engaged in a protected activity known to the defendant; 2) he was thereafter subjected to an adverse employment decision by the defendant; and 3) there *549 was a causal link between the two. See Erickson v. Marsh & McLennan, 117 N.J. 539, 560, 569 A.2d 793 (1990); Jamison v. Rockaway Tp. Bd. of Educ., 242 N.J. Super. 436, 445, 577 A.2d 177 (App.Div. 1990); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).
Once a plaintiff establishes the prima facie elements of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the decision. Jamison, supra, 242 N.J. Super. at 445-47, 577 A.2d 177. Thereafter, the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive. Ibid.
Romano was engaged in a protected activity by assisting Anderson as a witness in her lawsuit for sexual harassment. Further, it is clear that he was subject to an adverse employment decision as he was fired. Thus, the trial court properly found that Romano had met the first two prongs of the prima facie test.
The judge, however, in considering the third element, the causal connection, focused on the fact that at least ten years had passed between the time of the Anderson incident, when the defendant knew Romano was a witness, and his termination. She stated, "His statement was given in 1982 when he was discharged in 1992. The extent of time alone defeats any attempt to show a causal connection between the two." In addition, the judge found that a "significant intervening event" had occurred, "namely the undisclosed romantic relationship and marriage between the plaintiff and the company's adversary, Nancy Anderson." The judge found that "the discovery of the relationship with Anderson and not the fact the plaintiff was a witness in her litigation triggered his discharge." Because of these findings, the judge held that it would be impossible for a reasonable factfinder to conclude that the plaintiff was discharged due to his role as a witness.
*550 Clearly, causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive. While the cases note protected conduct that is closely followed by the adverse action, see, e.g. House v. Carter-Wallace, 232 N.J. Super. 42, 556 A.2d 353 (App.Div.), certif. denied, 117 N.J. 154, 564 A.2d 874 (1989); Bimbo v. Burdette Tomlin Mem. Hosp., 644 F. Supp. 1033 (D.N.J. 1986), we find no case that stands for the proposition that proximity is the only circumstance that justifies an inference of causal connection.
In the present case, the motion judge should not have limited her attention to the proximity between Anderson's original complaint and the firing of plaintiff. We doubt that a sophisticated employer, such as defendant, would immediately retaliate. Rather, a jury may find that after Romano's testimony became more favorable to Anderson, defendant's wounds merely festered until an opportunity to terminate presented itself in the form of knowledge of Romano's marriage to Anderson. Even if he changed his version in September 1991, a jury might find that he had only then gained the strength to come forward with the truth for the first time. We are satisfied that on the facts presented, a reasonable jury could find that Romano was terminated because he honestly supported Anderson's version of the incident or otherwise failed to trivialize its importance.
Once a plaintiff has established a prima facie case, defendant must articulate a legitimate, non-discriminatory motive for the discharge. Jamison, supra. The trial court did not directly address this issue, having dismissed the count based upon the lack of any causal connection. However, the judge's ruling implied that the undisclosed relationship and marriage to a company adversary was a legitimate, non-retaliatory reason.
Defendant asserts that a legitimate, non-retaliatory reason for firing plaintiff was:
[His] conduct in failing to disclose and concealing [his] relationship with Ms. Anderson and making false statements to [his] supervisors breached [his] duties as a Brown & Williamson employee, constituted a conflict of interest and violated *551 Brown and Williamson's Standards of Business Conduct. For this reason, [his] employment has been terminated.
The legitimacy of this reason is not determinative of whether or not summary judgment was appropriate on plaintiff's retaliatory discharge claim. See Jalil, supra, 873 F.2d at 708. For purposes of our review, we assume that this was a legitimate non-discriminatory reason. Nonetheless, once a defendant has met its burden of production of a legitimate reason for the discharge, the plaintiff is afforded the opportunity to show that a discriminatory intent motivated the defendant's actions, and not the legitimate reason offered by defendant. Jamison, supra, 242 N.J. Super. at 445, 577 A.2d 177. Plaintiff may do this indirectly, by proving that the proffered reason is a pretext for the retaliation, or directly, by demonstrating that a discriminatory reason more likely than not motivated defendant's action. Id. at 445-47, 577 A.2d 177.
In the context of surviving summary judgment, plaintiff need only raise a genuine issue of fact with regard to the employer's actual motive. See, e.g., St. Mary's Honor Ctr. v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In Fuentes v. Perskie, 32 F.3d 759 (3d Cir.1994), the court stated:
The basic framework ... illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action....
* * * * * * * *
[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, ..., was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). [To do so,] the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ... and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."
[Id. at 764-65 (citations omitted).]
*552 See also Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir.1993) (the proper inquiry is whether the plaintiff had proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons"); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 527 (3d Cir.1992) cert. denied ___ U.S. ___, 114 S.Ct. 88, 126 L.Ed.2d 56 (plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision).
Defendant argues that plaintiff has offered no evidence to demonstrate "such weaknesses, inconsistencies, incoherencies or contradictions in [defendant's] proffered legitimate reasons." See also, Fuentes, supra. Defendant asserts that not a scintilla of evidence indicates that the proffered reason was a post hoc fabrication or did not actually motivate the employment action.
The record, however, indicates that plaintiff did articulate sufficient facts to cast doubt on the proffered reason. Defendant's termination letter to plaintiff contains the following statements which, when read together, put in question whether the proffered reason was what actually motivated defendant in firing the plaintiff:
As you are well aware, you were a material witness with respect to matters at issue in a lawsuit against Brown & Williamson by a former Brown & Williamson employee, Nancy Anderson. Ms. Anderson's suit sought substantial money damages from Brown & Williamson.
* * * * * * * *
I will also note that the settlement of Ms. Anderson's claim was based largely on account of the incident between Ms. Anderson and her supervisor. I understand that your recollection of this incident changed substantially in favor of Ms. Anderson as trial approached. It is also my understanding that had you not concealed your relationship with Ms. Anderson and changed your account of the incident substantially in her favor, Brown & Williamson would not have settled her claim as it did. This resulted in substantial damages to Brown & Williamson.
A reasonable factfinder could infer that the belief by defendant that plaintiff had caused substantial economic damages to the company by indicating that he would testify more favorably to Anderson was a motivating factor in plaintiff's discharge, despite the lack of an express statement by defendant that this was the *553 reason for the termination. The above language could be found to be inconsistent with the defendant's proffered reasons.
A reasonable factfinder could find that the allegations regarding a change in plaintiff's version were fabricated to disguise the true motive for plaintiff's firing. Defendant admits that the only recorded statement of the plaintiff's version was lost many years ago. Defendant's assertion that plaintiff's statements on prior occasions, in 1986, 1990, and early 1991, were more favorable to the defendant, are not supported by attorney notes or any other writing. This is only defendant's in-house counsel's recollection. Defendant urges that its attorney's word should be conclusive because she is an officer of the court. However, plaintiff points out that the settlement amount may have reflected unfavorably upon the attorney's job evaluation in 1992, thereby giving a reason for the attorney to find a scapegoat.
The only recording of plaintiff's account of the incident in the record was taken in February 1992, when defendant investigated rumors that plaintiff had married Anderson. This account does not indicate any change in his prior testimony. Also, plaintiff insisted in 1991, when questioned by in-house counsel, that he had not changed his testimony. Further, the account of the allegedly changed testimony does not appear to corroborate Anderson's account.
Additionally, plaintiff was not married to Anderson at any time while Anderson was the defendant's adversary. The two were married after the settlement. Yet, defendant claims to have fired plaintiff for failing to disclose his relationship and marriage to Anderson, an adversary. Defendant cites the "Standards of Business Conduct," without any reference to specific provisions to justify its decision regarding plaintiff's wrongdoing. Defendant's vice-president asserts that plaintiff's non-disclosure placed plaintiff in a position to be privy to confidential attorney-client information. The present record, however, does not support this assertion. There does not appear to have been any opportunity for privileged information to have been given to plaintiff. In any event, defendant *554 did know that plaintiff and Anderson were friends. A jury might find that if the contact between defense counsel and Romano, its last available witness to the incident, had been more extensive that plaintiff would have disclosed the relationship, particularly if asked how close their friendship was. These facts cast additional doubt upon the defendant's proffered reason for the discharge.
In sum, the motion judge erroneously found that plaintiff had failed to establish a prima facie case of retaliatory discharge. Enough of an inference of retaliatory motive was present in the record to meet the requirements of causal connection. Plaintiff established enough of an inference that defendant's proffered reason was not the actual motivating reason behind its actions. Accordingly, summary judgment as to Count I should have been denied. It was for the jury to resolve issues of credibility and to determine if the proffered reason was in fact the actual reason for the termination. We reverse the Law Division's grant of summary judgment as to Count I for wrongful termination.
We affirm the dismissal of the remaining Counts of plaintiff's complaint substantially for the reasons expressed by the Law Division judge in her opinions from the bench on February 18, 1994 and April 20, 1995.
Affirmed in part and reversed and remanded in part.