Eliza REYES

v.

**McDONALD PONTIAC–GMC TRUCK, INC., et al.**

Civil Action No. 96–2219 (NHP).

United States District Court, D. New Jersey.

April 8, 1998.

Steven B. Horowitz, Ruderman & Glickman, P.C., Springfield, NJ, for plaintiff.

Karl A. Fenske, Morristown, NJ, for defendants.

### *LETTER OPINION*

### *ORIGINAL ON FILE WITH CLERK OF THE COURT*

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on a motion for summary judgment by defendants—McDonald Pontiac–GMC Truck, Inc., Jack McDonald, and Ed Levinstone—to dismiss the Complaint of plaintiff, Eliza Reyes. The matter was decided without oral argument, pursuant to Fed.R.Civ.P. 78. For the reasons outlined herein, defendants' motion is **GRANTED** and plaintiff's Complaint is **DISMISSED.**

## STATEMENT OF FACTS

Plaintiff Eliza Reyes ("Reyes" or "plaintiff") first began working at defendant McDonald Pontiac–GMC Truck, Inc. ("the dealership") on October 11, 1994. She was employed as the Business Manager, and her duties were varied. She was responsible for, among other things, preparing loan documents and supporting documents for sales and leases; she was responsible for contacting customers after a sale to sell "after-market" items, such as car alarms or premium stereo equipment; she contacted customers to set up delivery schedules; and she ensured that vehicles were properly "prepped" for delivery.

Sales personnel would send customers interested in purchasing a vehicle to Reyes, who would talk about the financial arrangements of the sale and perhaps sell additional goods or services to the customer for the vehicle. Plaintiff's commissions were based on a percentage of the total gross sale, as were the salespersons' commissions.

The first sixty days of plaintiff's employment was considered a trial period, during which time she received a weekly salary of $300.00 and a draw against her commissions of $300.00. Plaintiff was given an orientation by Levinstone, and she was given a list of vendors to contact to become familiar with their services. She was also given product literature on after-market items that the dealership had a history of selling. During plaintiff's first week, Jack McDonald discussed with plaintiff her lack of interaction with the sales team.

There were several incidents upon which plaintiff relies in support of her claims. Plaintiff alleges that on October 19, 1994, plaintiff attempted to talk to salesperson Patrick Manna about a customer deal. Because Manna was on the phone, plaintiff decided to call the customer to try and sell after-market items. The customer was not interested, but merely wanted to know when he could pick up the car. Plaintiff said she would speak with Manna and get back to the customer.

When plaintiff questioned Manna about an appropriate pick-up time, plaintiff alleges that Manna became verbally abusive and yelled, "Who the f*** told you to call my customer ... you don't go calling my customer ... how the f*** do you think I'm going to deliver a car today."

Later, plaintiff was in Tom Berenback's office when Manna came in and threw a deal jacket from a customer across a counter at plaintiff, calling plaintiff "Miss F****** Queen Bee" in front of customers in the showroom.

Plaintiff spoke to defendant Levinstone, the sales manager at the dealership, and recounted the incidents. Levinstone assured plaintiff that he would talk to Manna. Levinstone spoke with both individuals about the working relationship between the two, but the situation continued to deteriorate.

On November 5, 1994, a meeting was held between Manna, plaintiff, and Levinstone. Plaintiff alleges that during the meeting, Manna referred to plaintiff as a "bitch" and stated, "Look, we don't have to be lovers." Plaintiff responded, "That will never happen." At this point, Manna got up to leave. While doing so, he pushed back in his chair, and the table slid a short distance and hit plaintiff in the chest. Though plaintiff alleged that she was injured by the incident, she declined McDonald's offer to take the day off; instead, she worked the remainder of the day.

That same day, plaintiff and Manna met separately with McDonald and Levinstone. Plaintiff complained that she was extremely upset and afraid of Manna's temper. Manna complained that plaintiff had called him names, mishandled his customers, and refused to follow his instructions.

Manna quit the following Wednesday, November 1, and plaintiff was fired by McDonald on November 11, 1994, who stated that plaintiff did not have the qualifications for the job. McDonald maintains that plaintiff became "threatening, ugly, foul [and] vicious" and exclaimed that McDonald would be "sorry" that he was "doing this to her."

After her termination, defendants became aware that plaintiff had been fired by her previous employer in September 1994 because of personality conflicts with sales personnel, an unwillingness to ask for help, a

negative effect on the sales department, and a general lack of knowledge.

## *DISCUSSION*

### *Summary Judgment*

The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56(c), which provides in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant has the initial burden of identifying evidence that it believes shows an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the nonmovant will bear the burden of proof at trial, the movant's burden can be discharged by showing that there is an absence of evidence to support the nonmovant's case. *Id.* 477 U.S. at 325.

If the movant establishes the absence of a genuine issue of material fact, the burden shifts to the nonmovant to do more than "simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party is given the benefit of any reasonable inferences to be drawn from the record. *See, e.g., Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

### *Title VII*

■ In all cases of sexual harassment, the plaintiff bears the burden of proving such harassment. The plaintiff must show, in order to prove a hostile environment sexual harassment claim, that: (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 860 (3d Cir.1990).

■ Plaintiff simply can not prove these elements. Initially, there is no discrimination. Plaintiff had a severe personality conflict with Manna, a subordinate, but this did not arise because of the sex of either party. Plaintiff worked at the dealership for approximately one month, and she was fired because of her inability to adequately perform her job. Manna presumably saw that the situation was not going to be resolved, in that management would not take sides, so he preemptively resigned. The supervisors did what they could to ameliorate this problem by meeting with the parties together, then separately, but there was nothing that could be done. Management made a decision that plaintiff was not adequately performing her work and decided to terminate her.

■ Name calling and loud arguments do not constitute a sexual harassment claim. The fact that Manna referred to plaintiff on two occasions as a "bitch" or "Miss F****** Queen Bee" does not show that she was discriminated against because of her sex. Was Manna rude? Yes. Were Manna's comments inappropriate in an employment setting? Yes. But that is all they were. Sometimes words of frustration and anger are only meant in that spirit.

■ Even so, workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Svcs., Inc.*, —— U.S. ——, 118 S.Ct. 998, 140 L.Ed.2d 201, 1998 WL 88039, *4 (1998). The *Oncale* Court was quick to note that Title VII should not expand into a general civility code in the workplace, but should only forbid that behavior which is "so objectively offensive as to alter the conditions of the victim's employment." *Id.*

As Judge Posner recently wrote:

It is true that "bitch" is rarely used of heterosexual males.... But it does not necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or maternal characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect. In its normal usage, it is simply a pejorative term for "woman."

*Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1168 (7th Cir. 1996). As Judge Posner goes on to reason, there is no automatic inference from the word "bitch" that an individual's abuse of a woman is motivated by her gender rather than by a personal dislike that is unrelated to the gender of either person. *Id.* at 1168.[1]

Based upon plaintiff's previous employment experience in the same type of job, her actions with this dealership were consistent with those which led to her dismissal by her previous employer. It matters not whether plaintiff was male or female. It is highly probable that had she been a male and her attitude the same, she would have encountered the same conflict with either Manna or another employee. Most of Manna's comments were directly related to plaintiff's performance (or lack of performance) of her job duties. Title VII does not prohibit all verbal or physical harassment in the workplace; it prohibits discrimination because of sex. Sexual harassment is one of the workplace evils that Title VII and the LAD were enacted to eradicate and remedy. They are not cure-alls for bad feelings or personality conflicts.

Moreover, Manna's actions were neither pervasive or regular. Plaintiff recounts several isolated incidents of conduct by Manna which, even if it constituted harassment on the basis of plaintiff's sex, were not pervasive when taken as a whole. The few instances illuminated by plaintiff took place on two or three days over nearly a month's time.

Because plaintiff is unable to prove the initial elements of her Title VII claim, the claim will be dismissed.

### New Jersey Law Against Discrimination

■ In construing the New Jersey Law Against Discrimination ("LAD"), New Jersey courts often look to Title VII of the Civil Rights Act of 1964 for guidance. *Lehmann v. Toys 'R' Us, Inc.,* 132 N.J. 587, 600, 626 A.2d 445 (1993).

In *Lehmann,* the court held that to establish a *prima facie* case of hostile environment sexual harassment under the LAD, plaintiff must show that the conduct "(1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." 132 N.J. at 603–04, 626 A.2d 445.

■ The first element is satisfied where the conduct is sexual or sexist in nature. "When a plaintiff alleges that she has been subjected to sexual touchings or comments, or where she has been subjected to harassing comments about the lesser abilities, capacities, or the 'proper role' of members of her sex, she has established that the harassment occurred because of her sex." *Id.* at 604, 626 A.2d 445. As discussed with regard to Title VII *supra,* plaintiff is unable to satisfy this element. Manna did not touch her or proposition her in a sexual manner. Manna did not complain that plaintiff could not perform her job adequately because of her sex, nor did he make any comments about females in general being less competent.

■ Moreover, plaintiff is unable to prove that the conduct was "regular and pervasive." Although a single occurrence can be severe enough to meet this prong, it is a

1. Plaintiff relies heavily on an unreported Fourth Circuit case in support of her claim. *See Shope v. Board of Supervisors of Loudoun County,* 1993 WL 525598 (4th Cir., Dec.20, 1993). In that case, Shope introduced as evidence instances where she was told that she "looked ridiculous" in the dress she was wearing. Another time, she was told that she "shouldn't be such a soft woman." Subsequently, she was told that she was "too aggressive a woman" for the job. She was twice called a "stupid woman" and was told that "if you're a weak woman and you've got mental problems, then you just let somebody else come in here and do this job." *Id.* at *1–2. Clearly, the conduct in *Shope* was far more egregious than the few comments made to Reyes in the case *sub judice,* as it went directly to Shope's gender.

"rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile." *Id.* at 606, 626 A.2d 445. Courts must consider the cumulative effect of the various incidents, bearing in mind that " 'each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes.' " *Id.* at 607, 626 A.2d 445 (quotation omitted).

Here, plaintiff and Manna had a distinct personality conflict, and plaintiff's comments and attitude certainly contributed to the situation. The few incidents which occurred over a seven-day period were not cumulatively regular or pervasive enough to satisfy this part of the *Lehmann* test.

Because plaintiff is unable to prevail on the initial elements of the test under the LAD, plaintiff's state law claim must fail.

### Retaliatory Discharge

New Jersey law provides:

It shall be an unlawful employment practice, or, as the case may be, unlawful discrimination ... for any person to take reprisals against any person because [the person] has opposed any practices or acts forbidden under this act or because he has filed a complaint, testified or assisted in any proceeding under this act.

N.J.S.A. § 10:5–12(d).

■ To establish a *prima facie* case under the LAD, plaintiff must show that: (1) she was engaged in a protected activity known to the defendants; (2) she was thereafter subjected to an adverse employment decision; and (3) there was a causal link between the two. *See Romano v. Brown & Williamson Tobacco,* 284 N.J.Super. 543, 549, 665 A.2d 1139 (App.Div.1995); *see also Erickson v. Marsh & McLennan Co.,* 117 N.J. 539, 560, 569 A.2d 793 (1990).

Once a plaintiff establishes the *prima facie* elements of retaliation, the defendant must articulate a legitimate, nonretaliatory reason

for the decision. *See Jamison v. Rockaway Tp. Bd. of Educ.,* 242 N.J.Super. 436, 445–47, 577 A.2d 177 (App.Div.1990). Then, the plaintiff must come forward with "evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." *Id.* A plaintiff may do this indirectly, "by proving that the proffered reason is a pretext for the retaliation, or directly, by demonstrating that a discriminatory reason more likely than not motivated defendant's action." *Id.* at 445, 577 A.2d 177.

■ To defeat summary judgment when the defendant answers plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its actions, plaintiff must point to evidence from which a fact finder could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). More specifically, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence.' " *Id.* at 765. *See Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993).

■ Initially, the Court has found that defendants did not engage in an unlawful act, and there is no evidence that plaintiff complained to any of the defendants about being sexually harassed by Manna. Rather, the complaints stemmed from the terrible animosity between the two employees. Plaintiff never complained that the outbursts and name-calling by Manna were gender-related or sexual in nature. Therefore, plaintiff is unable to show that she was engaged in a protected activity, and she can not satisfy the prima facie elements of a retaliatory discharge claim.[2]

**2.** Plaintiff was clearly subjected to an adverse employment decision, as she was fired by the dealership. Based upon the evidence which shows that plaintiff had difficulty with the posi-

tion and with the interpersonal relationships commensurate with that job, plaintiff is also unable to show the causal link necessary. Though the adverse employment decision was

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment is **GRANTED**, and plaintiff's Complaint is therefore **DISMISSED**.

## FINAL ORDER

This matter having come before the Court on the motion of defendants—McDonald Pontiac–GMC Truck, Inc., Jack McDonald, and Ed Levinstone—to dismiss the Complaint of plaintiff, Eliza Reyes; and the matter having been decided without oral argument, pursuant to Fed.R.Civ.P. 78; and for the reasons set forth more fully in the accompanying Letter Opinion;.

IT IS on this 8th day of April, 1998,

**ORDERED** that defendants' motion be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that plaintiff's Complaint be and hereby is **DISMISSED.**

temporally close to plaintiff's complaints of Manna's attitude, there is no evidence that she was terminated because of those complaints. Causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive. *Romano,* 284 N.J.Super. at 550, 665 A.2d 1139. The connection can also be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, i.e., protected conduct followed closely by adverse action. *See Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). Because the Court has found that there was no protected conduct of which plaintiff complained, the causal element can not be satisfied.