**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1428-24

MAURICE CLINE,

     Plaintiff-Appellant,

v.

CITY OF PATERSON
and TIMOTHY MUNGO,

     Defendants-Respondents.

_____

Argued March 2, 2026 – Decided March 25, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1475-22.

Fredrick L. Rubenstein argued the cause for appellant (Shah & Rubenstein, LLC, attorneys; Fredrick L. Rubenstein, on the briefs).

Christopher K. Harriott argued the cause for respondents (Florio Kenny Raval LLP, attorneys; Christopher K. Harriott, on the brief).

PER CURIAM

Plaintiff Maurice Cline appeals from a December 10, 2024 order granting summary judgment in favor of the City of Paterson (the City) and Timothy Mungo (Mungo) (collectively defendants). Cline's complaint alleged hostile work environment and retaliation claims against defendants pursuant to the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. For the reasons that follow, we affirm.

I.

We begin by reviewing the facts in the summary judgment record, viewed in the light most favorable to Cline as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Cline began working for the City in 2020 as a building maintenance and repair worker in the facilities department. From the outset, Cline was supervised by and reported to both Louis Guzman, Director of Facilities and senior supervisor, and Mungo, a junior supervisor. During this period, Cline claimed to have overheard an offensive statement made by Guzman about Jamaicans. Cline, however, did not file a complaint regarding Guzman's comment, but was subsequently interviewed about the incident by the City's Law Department in connection with another employee's complaint concerning the same remark.

2

Several months later, on February 8, 2021, Cline was injured at work while moving a filing cabinet under Mungo's supervision. Cline was out of work for approximately six months, during which time he filed a workers' compensation claim. Cline returned to work in August 2021 with restrictions against heavy lifting. Despite these restrictions, Cline claims Mungo asked him to lift heavy objects. Cline complained to the City and sought a transfer to a less physically demanding position, which he claims prompted Guzman and William Rodriguez, the Director of Public Works, to give him a "hard time."

According to Cline, approximately two months later, Mungo directed him to pick up paint and a large bucket of spackle. Cline carried the paint but left the spackle and immediately complained of sharp back pain. The next day, Cline received a write-up for incompetency and insubordination, and was informed that he would need a fitness for duty exam if he refused to perform his duties. Despite this write-up, however, Cline was never formally disciplined.

In another incident, at "some point in 'late 2021,'" Cline was present when Juan Hernandez, a co-worker, "came driving real fast through the park," nearly striking Cline and another co-worker. When asked about the reason for his reckless driving, Hernandez allegedly responded, "he [drove] like that so he

A-1428-24

could kill Jamaicans."  At the time, Cline did not formally complain about Hernandez's statement.

On November 3, 2021, Cline filed a workplace harassment complaint against Mungo, asserting he was unfairly asked to lift heavy objects following his return from workers' compensation leave despite his medical restrictions. The following month, Cline filed a supplemental complaint alleging that Mungo wore a body camera and recorded him while he performed his duties, and that Mungo interrupted his assignments even when Cline was not under his direct supervision, causing him emotional distress.  The City commenced a workplace investigation and interviewed Cline and several other employees.

The investigator issued her finding on April 25, 2022, concluding that Cline "was disciplined because he failed to complete his work assignments, not because of his membership [in] a protected class" based on any characteristic in the City's Personnel Policies and Procedures Manual or the LAD.  The investigator further concluded no harassment occurred.  Cline was subsequently transferred to another position within the facilities department where he was no longer supervised by Mungo.

In June 2022, Cline filed a three-count discrimination complaint in the Law Division, alleging violations of the LAD and CEPA.  A period of discovery

4

ensued wherein Cline was deposed. Regarding the incident involving Guzman, Cline stated:

> I can't tell you what initiated the conversation because I really wasn't paying attention to it initially. . . . [O]nce he made the comment, I turned around and was like, you know, you got three Jamaicans standing in front of you. And he went further on about saying how he didn't like both Jamaicans and Dominicans. And my remark was, but you're Dominican, and he went to go explain, and I kind of walked off because I was – you know, I just didn't want to hear it anymore.

Guzman's comments were allegedly made in Cline's presence, although they were not directed at him. Two other employees were also in the vicinity at the time and one of them filed a complaint against Guzman and named Cline as a witness. The record does not contain any additional deposition testimony from any other party or witness related to this incident.

On August 30, 2024, defendants moved for summary judgment, arguing Cline could not establish a disability-based hostile work environment claim, the alleged remarks were neither severe nor pervasive, and that Cline suffered no adverse employment action or retaliation.

On December 10, the motion judge granted summary judgment in favor of defendants, dismissing Cline's complaint with prejudice. The motion judge concluded that there was "[in]sufficient evidence at this stage to support an

5

adverse employment action," and, thus, Cline failed to meet the prerequisites for either of his LAD or CEPA claims. The court reasoned that Cline was never formally disciplined and "a worker[s'] compensation claim in and of itself is not a protected characteristic" for purposes of raising a claim under LAD. The court found that the two alleged anti-Jamaican remarks made by different individuals roughly a year apart were, at most, "offensive, perhaps rude," but not severe and pervasive, particularly where no adverse employment action resulted. This appeal followed.

II.

We review de novo the trial court's grant of summary judgment to defendants. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Townsend v. Pierre, 221 N.J. 36, 59 (2015)). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009). That standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

6

In deciding whether a genuine issue of material fact exists, "the motion judge must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citing Brill, 142 N.J. at 540). However, this court owes "no deference to the motion judge's conclusions on issues of law." Bove v. AkPharma Inc., 460 N.J. Super. 123, 138 (App. Div. 2019) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Our review of an order granting summary judgment requires consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

A.

We first address Cline's argument that the court erred in granting summary judgment on his hostile work environment claim brought under the LAD.

To establish a cause of action for a hostile work environment under the LAD, a plaintiff must prove by a preponderance of the evidence "that the complained-of conduct (1) would not have occurred but for the employee's

7

protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 24 (2002) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). The principal inquiry in determining severe or pervasive conduct is whether a reasonable person would believe the conditions of his or her employment are altered and the working environment is hostile. Shepherd, 174 N.J. at 24; Lehmann, 132 N.J. at 604.

The LAD is not intended to be a general workplace civility code. The reasonable person standard views the conduct objectively and does not allow "claims based on the idiosyncratic response of a hypersensitive plaintiff to conduct that is not objectively harassing." Lehmann, 132 N.J. at 613. "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Id. at 607 (alteration in original) (quoting Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991)). The burden of proving discrimination "remains with the employee at all times." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005).

Cline alleges that the remarks made by Mungo and Hernandez demonstrate animosity based on Jamaican ethnicity and support a hostile work

environment claim. Specifically, he contends that his supervisor Guzman's comment about "not liking Jamaicans," Hernandez's statement that he "drives like that so he could kill Jamaicans," and the City's handling of his workplace restrictions and assignments, taken together, create an objectively hostile work environment. We are unpersuaded.

We note that Cline's claim is predicated on two isolated comments made over the course of more than a year apart from each other by different individuals, only one of whom—Guzman—was Cline's supervisor. As the court acknowledges, these comments may be "offensive, perhaps rude," but they are not otherwise indicative of a pattern of harassment or hostile conduct in the workplace. Although made in his presence, neither comment was directed at Cline. Moreover, the remarks did not materially alter the terms or conditions of Cline's employment or his working environment. Mere offhanded comments and isolated incidents are not sufficient to sustain a hostile work environment claim, unless it becomes "so severe as to pollute the work environment, rendering it irretrievably hostile." Cutler v. Dorn, 196 N.J. 419, 432 (2008) (citing Taylor v. Metzger, 152 N.J. 490, 495, 499, 502 (1998)). These remarks, though inappropriate in the workplace, do not satisfy the LAD standard, which requires "an outrageous and offensive statement made by a supervisor directly

9

to the complaining subordinate." El-Sioufi v. St. Peter's University Hosp., 382 N.J. Super. 145, 179 (App. Div. 2005).

Further, to the extent Cline contends that being required to lift heavy items contributed to a hostile work environment, the City's investigation concluded he was disciplined for failing to complete work assignments, not for his membership in a protected class. Protected activity, when based on a complaint, must concern discrimination. Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366, 377 (App. Div. 2014) (citing Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614, 619 (D.N.J. 1998)) (finding complaints stemming from "outbursts and name-calling" not sexual in nature not to suffice). We further conclude requesting plaintiff to perform tasks required by his job were insufficient to create genuine factual issues that the alleged conduct was "severe or pervasive enough to make a reasonable person believe that the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd, 174 N.J. at 24.

Accordingly, the record does not support Cline's contention that the City's handling of his work assignments was motivated by discriminatory animus or contributed to an objectively hostile work environment within the meaning of the LAD.

A-1428-24

B.

Similarly, Cline claims he was subjected to retaliation under the LAD and CEPA after engaging in protected activity. The prima facie elements of a retaliation claim require Cline to demonstrate that: (1) he was in a protected class; (2) he engaged in protected activity known to the employer; (3) he was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence. Victor v. State, 203 N.J. 383, 409 (2010) (citing Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)).

As the motion judge found, Cline's initial complaint only raised a workers' compensation claim for the injuries he sustained and did not raise any other basis for Mungo's actions. Cline points to Mungo's issuance of a disciplinary write-up as an adverse employment action. Even considering the alleged adverse employment action in the aggregate, this conduct did not result in any change to Cline's compensation, rank, or employment status. Cline further fails to show a causal connection between the alleged adverse employment action and protected activity as required under the fourth prong of the LAD. He does not identify any adverse employment action tied to his alleged protected activity, as he remained employed by the City and was never subjected to formal discipline or

11

any material change in the terms or conditions of his employment.  Thus, even when viewing the evidence most favorable to Cline, no rational jury could find that he established a prima facie case for retaliation under the LAD.

Cline's CEPA claim fails for the same reason:  he cannot establish an adverse employment action, protected whistleblower activity, or a causal connection between his November 2021 complaint and any alleged retaliatory conduct.

Under the CEPA, Cline must show:

> 1.  That [he] reasonably believes that [his] employer's conduct was violating either a law, or regulation promulgated pursuant to law;
>
> 2.  [T]hat [he] performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(a);
>
> 3.  [T]hat an adverse employment action was taken against [him]; and
>
> 4.  [T]hat a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003) (citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).]

Cline asserts that his complaints and cooperation in his co-worker's discrimination investigation constituted "whistle-blowing" activity protected

under CEPA. In pertinent part, CEPA defines whistle-blowing activity as "[d]isclos[ing], or threaten[ing] to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes" violates the law, a rule, or a regulation, or is "fraudulent or criminal" in nature. N.J.S.A. 34:19-3(c)(1) to (2). Even if Cline established that his internal harassment complaints about Guzman and Mungo and his participation as a witness constitutes protected whistleblowing activity, he fails to satisfy the remaining CEPA factors.

Retaliatory conduct under CEPA refers to "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Our court requires such actions either impact on the employee's "compensation or rank" or be "virtually equivalent to discharge" in order to give rise to the level of a retaliatory action required for a CEPA claim. Klein v. Univ. of Med. and Dentistry of N.J., 377 N.J. Super. 28, 46 (App. Div. 2005) (citing Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002)).

Again, Cline does not point to any suspension, demotion, termination, reduction in pay, or other material alteration of employment following his alleged whistleblower activity. Additionally, after his October 2021 write-up,

Cline received no formal discipline, and the City took remedial action by transferring him, at his request, to a different supervisor in a position that did not require heavy lifting. We are satisfied neither the reassignment nor the friction or "hard time" Cline encountered with management constitutes an adverse employment action under CEPA. See Hancock, 347 N.J. Super. at 360 ("Not every employment action that makes an employee unhappy constitutes an actionable adverse action under CEPA").

Because Cline cannot show an adverse employment action, he likewise cannot establish a causal connection to any alleged whistleblowing activity. The record is devoid of any evidence connecting Cline's supervisors' actions to retaliatory animus in response to the alleged protected activity. Temporal proximity alone, unsupported by evidence of a material employment detriment or circumstances permitting a reasonable inference of retaliatory motive, is insufficient to establish causation. See Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006); Dickson v. Community Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019).

## C.

Cline next argues that Mungo should be individually liable under the LAD's "aiding and abetting" provision, asserting that as a supervisor, he was

involved in some "affirmative acts of discrimination." Cline further contends that Mungo may be liable for aiding and abetting "because Mungo had supervisory authority over [him] and Guzman directly engaged in acts [that] discriminated against and harassed [him] on the basis of his race."

The LAD makes it "unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD],' N.J.S.A. 10:5-12[(e)], and such conduct may result in personal liability." N.J.S.A. 10:5-12(e); Tarr v. Ciasulli, 181 N.J. 70, 83 (2004).

To establish a prima facie case for aiding and abetting under the LAD, a plaintiff must prove:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Id. at 84 (alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

Individual aiding and abetting liability is limited only to supervisors. See, e.g., Herman v. Coastal Corp., 348 N.J. Super. 1, 28 (App. Div. 2002). However, supervisory status alone is insufficient to establish liability. Here, Cline

15

attempts to tie Mungo's liability to Guzman's alleged discriminatory remarks about Jamaicans. The record, however, does not support the contention that Mungo "aided and abetted" any such conduct undertaken by Guzman. To hold a supervisor liable for aiding and abetting, there must be "active and purposeful conduct." See Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (2008); see also Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 576 (2009). The record before us, however, is devoid of any evidence that Mungo engaged in active and purposeful conduct or knowingly and substantially assisted another in violating the LAD. Thus, Cline fails to establish any underlying violation of the LAD by defendants. See Tarr, 181 N.J. at 84 (requiring proof that "the party whom the defendant aids must perform a wrongful act that causes an injury").

Moreover, even if Cline could establish a viable LAD claim against defendants, the discrete acts he identifies do not show that Mungo knowingly participated in or substantially assisted any unlawful discrimination. At best, Cline seeks to impose individual liability based on Mungo's supervisory status, which does not satisfy the requirements for aiding and abetting liability under N.J.S.A. 10:5-12(e). See Cicchetti, 194 N.J. at 594-95.

Accordingly, we conclude the motion judge properly granted summary judgment because Cline failed to establish the elements of his LAD and CEPA

16

claims and presented no genuine issue of material fact in opposition to the motion. See Branch, 244 N.J. at 582; Green, 237 N.J. at 529.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1428-24